**GAINES, Edith, Appellee,**

v.

**The AMALGAMATED INSURANCE FUND, Appellant.**

**No. 84–1245.**

United States Court of Appeals, Third Circuit.

Argued Nov. 1, 1984.

Decided Jan. 23, 1985.

Rehearing and Rehearing En Banc Denied Feb. 25, 1985.

Jennifer A. Stiller, Ernest L. Tsoules, Jr. (Argued), Berriman & Schwartz, King of Prussia, Pa., Joseph T. Sebastianelli Law Associates, Malvern, Pa., for appellant.

Robert A. Rosin (Argued), Michael L. Golden, Philadelphia, Pa., for appellee.

Before GARTH and SLOVITER, Circuit Judges, and BARRY, District Judge.[*]

**OPINION OF THE COURT**

GARTH, Circuit Judge:

On essentially undisputed facts, the parties to this case dispute whether the Trustees' of the Amalgamated Pension Fund ("the Fund") interpretation of the Plan document to deny disability benefits to Edith

[*] Honorable Maryanne Trump Barry, United States District Court for the District of New Jersey, sitting by designation.

Gaines is a permissible one. The district court found the Trustees' interpretation to be arbitrary and capricious and directed payment of benefits to Gaines. Because we believe that the Trustees' interpretation of the Plan is a reasonable one, and is therefore neither arbitrary nor capricious, we reverse the judgment of the district court.

## I.

The Plan provision in question requires for eligibility, that a disability claimant:

> (b) Has been Totally and Permanently Disabled, as defined in Section 2.1[1] hereof, such disability has continued for a period of at least 18 consecutive weeks, and is eligible to receive disability insurance benefits under Title II of the Federal Social Security Act within nine months of last date of Covered Employment.

Section 4.3(b). The Trustees interpret this provision to require for Plan eligibility that a claimant actually becomes *eligible* to receive benefits within nine months of termination of employment.[2] Under the Trustees' view, only those found to have become disabled within three months of termination are in fact eligible; the Trustees having interpreted the nine-month provision of the Plan to take into account the six-month waiting period prescribed by Social Security.

Gaines, on the other hand, interprets this provision to require only that the Social Security Administration find that the *onset* of the claimant's disability, rather than the *eligibility* to receive Social Security benefits, occurred within nine months of termination. Since a claimant is not eligible to receive Social Security Disability benefits until six months after the date of onset of

disability, this difference between the two interpretations is significant.

At trial, the parties stipulated that Gaines was a covered employee, had served the required number of years, and last worked on August 4, 1978. An Administrative Law Judge's report[3] found that Gaines' disability commenced on April 23, 1979 (eight months and nineteen days after her termination). According to the April 23, 1979 date of onset of disability, Gaines' Social Security benefits began in October, 1979, 14 months after termination, or five months beyond the period of time which would qualify Gaines under the Trustees' interpretation of the Plan.

## II.

Judicial review of interpretation of a pension plan document by the Trustees charged with administering the Plan is limited to whether the Trustees' interpretation is arbitrary and capricious. *Wolf v. National Shopmen Pension Fund,* 728 F.2d 182, 187 (3d Cir.1984); *Rosen v. Hotel and Restaurant Employees and Bartenders Union,* 637 F.2d 592, 596 n. 5 (3d Cir.), *cert. denied,* 454 U.S. 898, 102 S.Ct. 398, 70 L.Ed.2d 213 (1981).

A plan interpretation should be upheld even if the court disagrees with it, so long as the interpretation is rationally related to a valid plan purpose and not contrary to the plain language of the plan. See *Miles v. New York State Teamsters Conference Pension and Retirement Fund Employee Pension Benefit Plan,* 698 F.2d 593, 601 (2d Cir.), *cert. denied —* U.S. —, 104 S.Ct. 105, 78 L.Ed.2d 108 (1983). Our review of the district court's determination that the Trustees' interpreta-

---

1. Section 2.1 provides in pertinent part:

    (p) *Total and Permanent Disability*—Total disability by injury or disease which permanently prevents the employee from engaging in any occupation or employment for remuneration or profit as further evidenced by eligibility to receive disability insurance benefits under Title II of the Federal Social Security Act.

2. A claimant need not actually *receive* the benefits within nine months to be eligible for Plan disability pension benefits. A determination by the Social Security Administration made even after nine months is sufficient, if the determination is that the claimant became eligible within the nine-month period after termination of employment.

3. The report of the Administrative Law Judge was dated August 3, 1979.

tion was arbitrary and capricious is plenary for application of legal principles. Findings of fact are measured by a clearly erroneous standard. The question of whether ambiguity exists is a question of law, subject to plenary review. *See Fox v. U.S. Department of Housing,* 680 F.2d 315, 319 (3d Cir.1982).

■ The terms of the Plan provide for eligibility for a disability pension if the claimant "is eligible to receive disability insurance benefits under Title II of the Federal Social Security Act within nine months of last date of Covered Employment." Under the Social Security Act (SSA), 42 U.S.C. § 423, the time of entitlement for disability benefits is defined as "each month beginning with the first month after his waiting period...." Section 423(c)(2) defines this waiting period as "[t]he earliest period of five consecutive calendar months throughout which the individual with respect to whom such application is filed has been under a disability...." Thus, under the SSA, benefits do not begin, nor is a claimant entitled to benefits, until the sixth month after the onset of disability. Gaines' eligibility certificate therefore bore a "date of entitlement" of "10/79", or six months after

April 23, 1979, the date of onset of disability.

The waiting period under the SSA is seen necessary to ensure that a claimant's disability is in fact a permanent disability. See H.Rep. No. 1189, 84th Cong., 1st Sess. 6 (1955), U.S.Code Cong. & Admin.News 1956, p. 3877. The Trustees urge that the Social Security waiting period also serves to insure that the disability for which claim is made was the cause of the claimant's termination of employment: that is, that a disability whose onset is closer in time to termination of employment is a disability more likely to be employment related.[4]

Given this background, we cannot agree with Gaines that the onset date must be the date which controls for qualification under the nine-month provision of the Plan. By its plain meaning, "eligible to receive" disability insurance benefits is clearly susceptible to an interpretation by the Trustees that the entitlement date for Social Security benefits must fall within the nine-month period prescribed by the Plan.[5] Nor can we say that the Trustees' interpretation of the Plan, which depends upon the "entitlement date" under the Social Security Act, is unrelated to any valid Plan purpose. We conclude that the interpretation by the Trustees is therefore neither arbi-

---

**4.** While the district court rejected testimony of this purpose as "self-serving," we are not bound by the Rule 52 "clearly erroneous" standard in our review of potential justification for the Trustee's reading of the Plan. The Trustee's subjective intent may be a question of fact; nevertheless, whether the Trustee's interpretation is rationally related to valid Plan objectives is a legal question.

**5.** Our research has not disclosed any other case interpreting such an eligibility clause. *Music v. Western Conference of Teamsters Pension Fund,* 712 F.2d 413 (9th Cir.1983) dealt with a similar interpretation of a plan to make eligibility depend on the date of entitlement after the completion of the waiting period. *Music* held that it was arbitrary and capricious to make computation of Music's pension subject to a different plan in effect at the completion of the waiting period rather than the plan in effect at the time of termination of employment. The *Music* court did not decide whether eligibility under a plan might reasonably hinge on an entitlement date within nine months of termination of employment; in fact, in the *Music* case, benefits

under the plan did not commence until after the waiting period expired.

The dissent, relying on the somewhat circular standard that "A rational and reasonable interpretation of a plan may still be arbitrary and capricious if contrary to the plain meaning of the plan," (*Dennard v. Richards Group, Inc.,* 681 F.2d 306, 314 (5th Cir.1982)), would find that the plain meaning of the term "eligible" must necessarily be different from the meaning of the term "entitled." Since "eligible" is not defined in the Plan, the dissent looks to the statutory definitions under the Social Security Act, 42 U.S.C. § 423(a)(1) to find this contrary "plain meaning." However, the Social Security Act does not define "eligible," but merely defines "entitled," thereby lending no substance to the distinction sought to be drawn by the dissent. We also observe that Websters Third New International Dictionary defines "eligible" in terms of "entitled": "1. fitted or qualified to be chosen or used: *entitled* to something." (emphasis added).

trary nor capricious, and, as a consequence, must be upheld.

## III.

The judgment of the district court will be reversed, and the district court will be directed to enter judgment for the Amalgamated Insurance Fund.

SLOVITER, Circuit Judge, dissenting.

Edith Gaines was an employee in the clothing industry insured under a collectively bargained for multiemployer pension and disability plan, administered by defendant Amalgamated Insurance Fund. Plaintiff left her employment on August 4, 1978, alleging permanent and total disability. A doctor's report in the record finds Mrs. Gaines suffers from a variety of chronic conditions, including degenerative arthritis, diabetes, and hypertensive cardiovascular disease, and states that she was totally and permanently disabled as of October, 1978.

In September, 1978 plaintiff filed an application for disability benefits under the Social Security Act. These benefits were awarded by an Administrative Law Judge by decision dated August 3, 1979, which stated that "beginning on April 23, 1979, the claimant was under a 'disability' as that term is defined in the Social Security Act." Payment of Social Security benefits does not begin until five months after this onset date. 42 U.S.C. § 423(c)(2)(A) (1982). Therefore, Gaines began to receive Social Security disability benefits in October 1979.

In February 1980, Gaines filed an application for disability benefits under her fund's retirement plan. There is no question that she met the length of service requirements of the plan and was permanently and totally disabled under the meaning of the plan provisions. The trustees of the plan rejected her application, however, because they concluded that she was not "eligible to receive disability insurance benefits under Title II of the Federal Social Security Act *within nine months of the last date of Covered Employment*," (emphasis added), as required by the plan.

The trustees interpret the plan's requirement that a participant must be *"eligible* to receive disability insurance benefits ... within nine months" to mean that s/he must not only have an onset date established by the Social Security Administration within 9 months, but also must be entitled to *receive benefits* commencing on (or dating retroactively back to) a date within 9 months. Thus, according to the trustees, although Gaines was found by the Social Security Administration to have become disabled within nine months of the last date of covered employment, she was nonetheless not entitled to her disability pension because the 5 months waiting period established by statute for disability claimants precluded her from receiving benefits within the nine months.

The district court found that the trustees' interpretation was arbitrary and capricious, the agreed upon standard of review, and entered judgment for plaintiff. In *Dennard v. Richards Group, Inc.*, 681 F.2d 306, 314 (5th Cir.1982), the court stated, "A rational and reasonable interpretation of a plan may still be arbitrary and capricious if contrary to the plain meaning of the plan." The court further stated, "When the trustee's interpretation of a plan is in direct conflict with the express language in a plan, this action is a very strong indication of arbitrary and capricious behavior." *Id.* We also have recently held that when a trustee's decision deviated from the terms of a plan or established interpretations, that determination was arbitrary and capricious. *Wolf v. National Shopmen Pension Fund*, 728 F.2d 182, 187–89 (3d Cir.1984).

I agree with the district court that the trustees' interpretation of the language "eligible to receive" as if it read "entitled to receive" or "actually receiving," was contrary to its plain meaning. In the first place, the plan itself does not define "eligible to receive ... disability insurance benefits," and we must therefore refer to the meaning of "eligibility" under the Social Security Act. That Act uses the different term *"entitlement"* to refer to the date on which (or back to which) payment is due.

42 U.S.C. § 423(a)(1) provides that, "Every individual who—.... (D) is under a disability ... shall be *entitled* to a disability insurance benefit (i) for each month beginning with the first month *after his waiting period ... in which he becomes so entitled to such insurance benefits....*" (emphasis added).

In the second place, the trustees have proffered no clear or credible explanation to support their very restrictive interpretation of this requirement. The attorney who acts as counsel to the fund and who advises the trustees testified for them that the trustees chose not to make an independent determination as to whether a participant was totally and permanently disabled, but instead delegated that determination to the Social Security Administration in order to save the cost of maintaining fund physicians. The trustees "consider the onset date the date that Social Security says you are now in fact totally and permanently disabled." App. at 83a.

He stated the nine-month rule was adopted by the trustees to insure that the termination of employment was disability related. The only rationale provided by defendants was that the trustees intended to establish a three-month grace period following termination of employment (the nine months set forth in the plan minus the five full months waiting period) because the determination of onset is inexact. According to the attorney's testimony, SSA's establishment of a *payment* date within nine months serves to establish that a participant became disabled within three months of the last day of covered employment, and this three-month period provides a margin of error for a determination that the termination was disability related.

I believe the trial judge justly rejected this testimony, construing the nine-month period to mean only three months, as implausible and self-serving. The trustees admittedly were relying on the determination of disability by the Social Security Administration. The onset of disability date, under the statute, is itself a determination of permanent disability, since the statute requires a finding that the individual cannot engage in any substantial gainful activity by reason of the impairment "which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A) (1982). Therefore, absent some language in the plan to the contrary, there is no basis for the attorney's claim that the trustees intended to use the Act's five-month waiting period as a means to establish either the fact of disability or its relation to employment.

Indeed, nothing prevents the trustees from enforcing the portion of their own plan which requires that employment be "terminated by reason of disability." By not independently inquiring into the timing of disability and by instead relying on the Act's five-month waiting period, the fund has reached the anomalous interpretation that a person such as Mrs. Gaines who claims to have left employment by reason of disability is excluded from disability benefits, whereas a person who suffers from an unrelated disabling accident within three months of termination receives a disability pension.

Furthermore, if the framers of the plan had intended to establish a requirement such as that which the trustees now favor, the plan could easily have been worded in terms of a "date of entitlement" to benefits within nine months, or explicitly stated that the date of actual payment (or retroactive payment date) must be within nine months, or (simplest of all) stated that the onset of disability date determined by the Social Security Administration must be within three months of termination of employment. That the plan does not use any of the above language is strong evidence that it was not intended to bar eligibility for those unfortunate beneficiaries for whom the SSA sets an onset date of between four and nine months after leaving employment. I would affirm the judgment of the district court.