Lionel A. COTE, Plaintiff,

v.

**BATTENFELD GREASE & OIL CORPORATION OF NEW YORK and Bankers Life Company, Defendants.**

No. Civ.–85–681C.

United States District Court,
W.D. New York.

March 24, 1987.

Schnell & Salmon (Richard Schnell, of counsel), Tonawanda, N.Y., for plaintiff.

Moot & Sprague (Gary F. Kotaska, of counsel), Buffalo, N.Y., for defendants.

CURTIN, Chief Judge.

Plaintiff in this action is a former employee of defendant Battenfeld Grease and Oil Corporation [Battenfeld]. Battenfeld provides a pension plan [Plan or Battenfeld Plan] for its employees, and codefendant Bankers Life Company [Bankers Life] serves as trustee for the Plan. Plaintiff alleges that he has been wrongly denied disability payments allegedly due him under the plan from March 1978 until his normal retirement date on December 1, 1983, or until he is no longer disabled, if earlier. Defendant Bankers Life is joined in this action because a judgment for plaintiff must provide for payment by Bankers Life.

Battenfeld removed this action to this court, invoking jurisdiction under the Federal Employee Retirement Security Program, 29 U.S.C. § 1132(a)(1)(B). Pending before the court are motions for summary judgment by plaintiff and defendant Battenfeld.

The Battenfeld Pension Plan provides for disability payments to participants who are "totally and permanently disabled while an Employee" of Battenfeld (Item 5, Exh. A, Art. XII). The central factual issue in this case is whether plaintiff's total and permanent disability commenced before or after his employment with Battenfeld was terminated.

## FACTS

On March 6, 1978, while working as a shipping clerk for defendant Battenfeld, plaintiff suffered "an episode of chest pains radiating to his arm and back" (Item 11, Exh. C). Plaintiff was absent from work for the next 17 weeks on his doctor's advice (Item 11, Exh. A). Plaintiff was paid New York State disability benefits during this period (Item 11, Exh. A; Exh. F, p. 4). Battenfeld thereafter terminated plaintiff's employment on June 29, 1978, stating in the termination letter that "we cannot continue to work shorthanded and must fill your present position" (Item 11, Exh. A). Plaintiff had not been diagnosed as totally and permanently disabled at the time of his termination from employment.

In October, 1978, plaintiff was diagnosed as suffering from cardiac insufficiency, and on January 3, 1979, had open-heart surgery. When advised of his condition in October 1978, plaintiff applied for Social Security Disability [SSD] benefits. His application was approved, and the date of entitlement to SSD benefits was set at September 1, 1978.

Plaintiff spoke with Battenfeld officials regarding an application for Plan disability payments in 1980, but no application was filed (Item 11, ¶ 11; Item 10, Exh. D). Plaintiff hired an attorney in 1981, and letters were exchanged thereafter between defendants and plaintiff's counsel relative to plaintiff's possible disability entitlement. Plaintiff filed an initial application for Plan disability payments in 1982, which was apparently not completed (Item 11, Exh. G). Plaintiff filed a subsequent application on May 17, 1984, which was denied by defendants (Item 11, Exh. A; Item 15, Exh. K). This action was commenced in New York State Supreme Court on May 2, 1985, and removed to this court on May 23, 1985.

## DISCUSSION

In order to avoid excessive judicial interference with pension plan administration, the lawful, discretionary acts of a pension committee should not be disturbed, absent a showing of bad faith or arbitrariness. *Miles v. New York State Teamster's Conference*, 698 F.2d 593, 599 (2d Cir.

1983). Where the trustees of a plan impose a standard not required by the plan's provisions, or interpret the plan in a manner inconsistent with its plain words, or by their interpretation render some provisions of the plan superfluous, their actions may well be found to be arbitrary and capricious. *Id.* at 599, *citing Morgan v. Mullins,* 643 F.2d 1320–21, 1324 (8th Cir.1981). However, the limited standard of review applied in these cases does mean that the trial court should not conduct a *de novo* hearing on a rejected applicant's eligibility for benefits or disregard a pension committee's reasonable interpretation of plan provisions. 698 F.2d at 599 (citations omitted).

Eligibility for disability benefits under the Battenfeld Plan is set forth in pertinent part by Art. XII of the Plan, which reads as follows:

> 12.1 *Eligibility:* A Participant shall be eligible for monthly disability payments under this Article if he is *totally and permanently disabled while an Employee,* which shall mean a Participant is unable to engage in substantial gainful activity due to illness or injury *so as to be entitled to a disability benefit under Title II of the Federal Social Security Act.*

Item 5, Exh. A (emphasis added).

Under the Social Security Act, an SSD claimant's "entitlement" date is the date on which his monthly SSD payments commence. 42 U.S.C. § 423(a)(1). Plaintiff's SSD benefit payments commenced on September 1, 1978, a date subsequent to his termination of employment by Battenfeld. However, a claimant's "entitlement" date also retroactively establishes that the disability for which he is entitled to SSD payments began five months earlier. That is, entitlement to SSD payments requires completion of a five (full calendar) month waiting period following the date of disability onset (Item 10, Exh. B, § 2.08). Plaintiff's date of disability *onset* was March, 1978, while he was still employed by Battenfeld. Plaintiff therefore contends that he is eligible for disability payments under the Plan because he was totally and permanently disabled within the meaning of the Social

Security Act as of his onset date in March 1978, notwithstanding that he did not know it at the time or when he was terminated on June 30, 1978.

Defendants do not dispute that there is a five-month waiting period between the onset of disability and entitlement to disability benefits under the Social Security Act. However, defendants point out that the Plan specifically states that total and permanent disability means to be "entitled" to SSD benefits. Plaintiff was not "entitled" to SSD benefits until September 1, 1978, *after* his termination of employment by Battenfeld. Therefore, defendants conclude, plaintiff is not eligible for disability payments under the Plan because he was not totally and permanently disabled, as defined by the Plan, until after his termination of employment by Battenfeld.

In *Gaines v. Amalgamated Insurance Fund,* 753 F.2d 288 (3d Cir.1985), the court upheld a decision by pension plan trustees similar to the one reached by the trustees here. In the circumstances of that case, the pension plan required an employee's total and permanent disability to have occurred *within nine months after his termination* in order to qualify for plan disability payments. Total and permanent disability under the plan was defined in part as "eligibility to receive disability insurance benefits under Title II of the Federal Social Security Act." *Id.* at 289 n. 1. In *Gaines,* as in the instant case, the claimant was eligible for plan disability payments if the plan trustees measured his total and permanent disability from his SSD onset date, and ineligible if they measured it from his SSD entitlement date. In *Gaines* as in the instant case, the plan trustees measured disability from the SSD entitlement date, disqualifying the claimant. In upholding the trustees' decision, the court in *Gaines* stated that "the waiting period under the SSA is seen necessary to ensure that a claimant's disability is in fact a permanent disability." *Id.* at 290. The court also endorsed the trustees' argument that measuring disability from the SSD entitlement date helped to insure that a claimant was "terminated by reason of disability," as the plan at issue in *Gaines* required. *Id.* at

290, 292. That is, the decision of the trustees in *Gaines* required a claimant's SSD onset date to occur within three months of termination in order for his SSD entitlement date to commence within nine months and make him eligible for that plan's disability payments.

However, two critical factors distinguish the instant case from *Gaines*. First, nothing in the record indicates that eligibility for disability payments under the Battenfeld Plan requires a claimant to be "terminated by reason of disability," as the plan in *Gaines* did. Eligibility under the Battenfeld Plan simply requires a claimant to be "totally and permanently disabled" while an Employee" (Item 5, Exh. A, Art. 12.1). Therefore, the defendants' contention that plaintiff was not terminated because of disability is immaterial. Even if true, that is not a rational basis for the trustees' denial of plaintiff's application, as it would have been under the plan at issue in *Gaines*.

Second, determination of total and permanent disability exclusively by the SSD entitlement date would have very different consequences under the plan at issue in *Gaines* and under the Battenfeld Plan. Under the former plan, a claimant's SSD onset date had to occur within three months *after* termination in order for his SSD entitlement date to occur within nine months after termination and thereby make him eligible for plan disability payments. Under the Battenfeld Plan, a claimant's onset date would have to occur a full five months *before* termination in order for his entitlement date to occur while he is still employed and make him eligible for Plan disability payments.

Determination of total and permanent disability exclusively by the SSD entitlement date would therefore create a condition, or "catch," under the Battenfeld Plan that is entirely lacking under the plan at issue in *Gaines:* it would necessitate that in order for a disability claimant to be eligible under the Battenfeld Plan, he would have to retain his job for five months while he was very likely disabled from work.

As noted, plaintiff, after 17 weeks of absence from work, was advised by a Battenfeld official that "we cannot continue to work shorthanded, and must fill your present position" (Item 11, Exh. A). The onset of a disability that is eventually deemed total and permanent will likely cause much absence from work. An employee may therefore have great difficulty retaining his job for five months beyond the onset date. Yet, if he does not, and if the trustees determine total and permanent disability exclusively by the SSD entitlement date, then under the Battenfeld Plan, the terminated employee would be ineligible for Plan disability payments.

Obviously, there are serious questions about the rationality of a decision which makes a likely consequence of disability— termination of employment within five months—itself a bar to eligibility for disability payments. Again, such a "catch" may result under the Battenfeld Plan if the trustees determine total and permanent disability exclusively by the SSD entitlement date.

It is not clear from the record whether the trustees only relied upon the plaintiff's SSD entitlement date in denying the plaintiff's application for Plan disability payments. The documentation provided by the plaintiff to the trustees consisted of his application for disability payments, a copy of his SSD entitlement effective September, 1978, and a copy of plaintiff's Veteran's Administration disability entitlement effective March 7, 1978. Since the plaintiff's application and the Veteran's Administration letter both indicated disability commencing during the period in which plaintiff was employed by Battenfeld, there are indications that the trustees did rely exclusively on plaintiff's SSD entitlement date in denying his application. However, plaintiff indicates that Battenfeld also had notice, before the date on which his application was denied, of a statement regarding plaintiff's disability from his attending physician. This letter indicates that plaintiff was "totally disabled" from March, 1978; however, it estimates the length of disability as only eight months (Item 14). Also,

there is some suggestion from the record that the trustees considered plaintiff's New York State disability payments to have been for partial disability (Item 15, Exh. C). Defendant also complains that despite repeated invitations, plaintiff never submitted other documentary support of his position that might have conclusively demonstrated that he was totally and permanently disabled while employed at Battenfeld. While this is a factor contributing to the uncertainty of the exact basis of the trustees' decision, it is not a basis for granting Battenfeld's motion for summary judgment.

 Under these circumstances, I find that there are genuine issues of material fact as to whether the decision of the trustees denying plaintiff's application for disability payments was arbitrary or in bad faith. Accordingly, the motions for summary judgment by plaintiff and defendant Battenfeld are denied.

Counsel are directed to meet with the court on March 31, 1987, at 9 a.m.

So ordered.