816 F.2d 671
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
 John BURDEN, President of Local Union 1470, District 28 of
United Mine Workers of America and members of
Local Union 1470, Plaintiffs-Appellees,
v.
TRUSTEES OF the HEALTH AND RETIREMENT FUNDS OF UNITED MINE
WORKERS OF AMERICA, Defendants-Appellants.
 
 No. 86-3064.
 United States Court of Appeals, Fourth Circuit.
 Argued Jan. 6, 1987.
Decided April 13, 1987.
 Before RUSSELL, Circuit Judge, and BUTZNER, Senior Circuit Judge, and SENTELLE, United States District Judge for the Western District of North Carolina, sitting by designation.
 Israel Goldowitz, Assistant General Counsel, United Mine Workers of America Health and Retirement Funds (Gerald E. Cole, Jr., Acting General Counsel; Thomas S. Gigot, Associate Counsel; Stuart B. Campbell, Jr.; Campbell, Young & Crewe, on brief), for appellants.
 Louis Dene, for appellees.
 PER CURIAM:
 
 
 1
 This is an appeal by the Trustees of the Health and Retirement Funds of the United Mine Workers of America (Trustees) from the district court's ruling that the Trustees had arbitrarily denied pension accrual benefits under the United Mine Workers of America ("UMWA") 1974 Pension Plan to the appellees for their periods of employment with the Clinchfield Coal Company prior to October 1966. The nineteen appellees are active and retired coal industry employees who, at various times beginning in the 1950's and 1960's, worked for Clinchfiled as either coal samplers, weighmen, or laboratory technicians. The appellees are participants in the 1974 Pension Plan, established by the UMWA and coal industry employers pursuant to the National Bituminous Coal Wage Agreement of 1974. The 1974 Wage Agreement is the successor to similar collective bargaining wage agreements first signed by Clinchfield and the UMWA in 1945 and continually thereafter.
 
 
 2
 The 1974 Plan provides that a participant shall receive credit for periods where the participant worked "as an employee in a job classified in the then existing bituminous coal wage agreement." Article IV (emphasis added). Although the 1971 Wage Agreement and subsequent agreements specify all covered job classifications, wage agreements prior to 1971 did not. Instead, earlier wage agreements contained a clause describing in general terms the types of work covered by and exempted from the collective bargaining agreements. The clause provided in part:
 
 
 3
 It is the intention of this Agreement to reserve to management and except from this Agreement an adequate force of supervisory employees to effectively conduct the safe and efficient operation of the mines and at the same time, to provide against the abuse of such exemptions by excepting more such employees than are reasonably required for that purpose.
 
 
 4
 Coal Inspectors and Weigh Bosses at mines where men are paid by the ton, Watchmen, Clerks, Engineering and Technical forces of the operator, working at or from a District or local mine office, are exempt from this agreement.
 
 
 5
 All other employees working in or about the mines shall be included in this Agreement except essential supervisors in fact such as: Mine foremen, Assistant Mine Foremen who, in the usual performance of their duties, may make examinations for gas as prescribed by law, and such other supervisors as are in charge of any class of labor inside or outside of the mines and who perform no production work. (Emphasis added).
 
 
 6
 The Trustees, in recognition of some claim of ambiguity in pre-1971 wage agreements regarding job classifications, and pursuant to their authority under Article VIII(B)(1) of the 1974 Pension Plan to promulgate binding rules and regulations to implement the Trust, adopted Interpretive Regulation 147 to clarify the terms "classified job" and "classified employment" as used in the Pension Plans. The regulation provides:
 
 CLASSIFIED EMPLOYMENT
 
 7
 Q: As used in the Pension Plans, what do "classified job" and "classified employment" mean?
 
 
 8
 A: The terms "classified job" and "classified employment" normally refer to employment which is listed or classified as bargaining-unit work under the pertinent national and/or district Coal Wage Agreement. Lists of jobs classified under the 1971 and 1974 Agreements are included as Appendices to the Agreements. Prior to 1971, job classifications were not set forth in the national agreement, and there has been some slight variations in bargaining or classified jobs from one area to another in the nation. When there is a question as to whether one of these positions was or was not classified at the time and place in question, it is Fund practice to consult the UMWA District and the employers involved for information on whether the job was bargaining-unit work.
 
 
 9
 Thus, under the 1974 Pension Plan and interpretive regulation, the question of pension credit for pre-1971 employment depends upon whether the employment involved bargaining unit work.
 
 
 10
 Prior to 1966, the appellees, unlike most of Clinchfield's employees, were not members of the collective bargaining unit represented by the UMWA and their duties did not involve "bargaining unit work." Hence, they were exempted from the UMWA wage agreements. Accordingly, they received lower salaries or hourly wages than members of the bargaining unit and received benefit coverage under a plan for employees exempted from the wage agreements. In 1966, however, UMWA District 28 organized Local 1470 for the express purpose of representing Clinchfield's coal samplers, weighmen, and laboratory technicians, thereby bringing them within the bargaining unit covered by the UMWA contract. Thus, in 1966 the plaintiffs became eligible to earn pension benefits pursuant to the operative wage agreement covering members of the bargaining unit.
 
 
 11
 In 1979 the appellees requested that the Trustees determine whether members of Local 1970 were eligible to receive benefit accrual credit for their pre-1966 employment. The Trustees held that while the appellees would receive credit for vesting purposes they would not receive credit for purposes of determining the amount of their pension benefits because they were not members of the bargaining unit covered by the UMWA wage agreements prior to 1966 and hence, were not "classified employees" under the terms of the 1974 Pension Plan. Upon reconsideration at the request of the appellees the Trustees sustained their decision. In 1984, the appellees brought an action in the district court seeking a declaratory judgment as to their eligibility for pre-1966 benefit accrual credit.
 
 
 12
 The district court agreed with the Trustees that the appellees' jobs were not within a UMWA bargaining unit prior to 1966 but held that the bargaining unit requirement for classification was inconsistent with the language of the applicable wage agreement and unlawful as requiring union membership. The court, therefore, found the Trustees' decision "contrary to the established law and ... arbitrary and capricious." The court then looked to the Wage Agreement of 1950, as amended, to determine whether the positions of coal sampler, laboratory technician and weighman were classified prior to 1966. The court, citing its previous decision in Mullins v. Mullins, 537 F.Supp. 840 (W.D.Va.1982), aff'd mem., 701 F.2d 166 (4th Cir.1983), found that the wage agreement "plainly indicates that all employees, except those specifically exempted, of any employer who is signatory to the Bituminous Coal Wage Agreement are included, and thus classified, if [they work] 'in and about the mines....' " Since the court found that the appellees had worked "in and about the mines" prior to 1966 and were not among those persons specifically exempted from the wage agreements, it concluded that the appellees held classified positions before 1966 regardless of their exclusion from the bargaining unit and granted the appellees benefit accrual credit for their pre-1966 employment. We reverse.
 
 
 13
 As stated by the district court, the question before us is "whether or not the [Trustees have] correctly interpreted the applicable regulations and whether their decision is consistent with law, or alternatively, whether the decision is not supported by substantial evidence or is arbitrary and capricious." Thus, we must determine whether the Trustees' bargaining unit requirement is lawful, consistent with the plain language and purpose of the plan, and if so, whether the Trustees' application of the requirement in this case was arbitrary and capricious. See Berry v. Ciba-Geigy Corp., 761 F.2d 1003, 1006 (4th Cir.1985). The court found the bargaining unit requirement unlawful, stating that to require "that a job be within the bargaining unit in order to be classified is tantamount to making union membership a prerequisite to classified work."
 
 
 14
 Union membership is neither a prerequisite to bargaining unit membership nor to coverage under a collective bargaining agreement. Teamsters Local 348 Health & Welfare Fund v. Kohn Beverage Co., 749 F.2d 315, 318 (6th Cir.1984), cert. denied, 105 S.Ct. 2024 (1985). The Supreme Court has repeatedly stated that no employee can be required to join a union as a condition of employment, although he can be required to meet certain financial obligations of a union member if he be within the bargaining unit subject to the union collective bargaining agreement such that he receives the benefits of union representation as provided in that agreement. NLRB v. General Motors Corp., 373 U.S. 734, 742 (1963). The Trustees' bargaining unit requirement mandates that for a position to be classified under the applicable UMWA collective bargaining agreement that position must be within the bargaining unit covered by the bargaining agreement. There is nothing unlawful or unreasonable in this requirement because a collective bargaining agreement between the UMWA and coal industry employers created the trusts solely for the benefit of members of the UMWA bargaining unit, who were the only employees the union was empowered to represent. See United Mine Workers of America v. Allied Corp., et al., 765 F.2d 412, 414 (4th Cir.1985), cert. denied, 105 S.Ct. 3527 (1985).
 
 
 15
 The Wage Agreement of 1950 and subsequent wage agreements created a contract between Clinchfield and the UMWA. The agreements were provided for "the exclusive use and benefit of the contracting parties" and stated that "as a condition of employment all employees shall be, or become, members of the [UMWA], to the extent and in a manner permitted by law, except in those exempted classifications of employment as hereinafter provided in this agreement." (Emphasis added). Two paragraphs in the agreements specified the covered and exempted positions. They provided that all employees working in or about the mines were included in the agreements except for essential supervisors, coal inspectors and weigh bosses at mines where men were paid by the ton, watchmen, clerks, and engineering and technical forces of the operator working at or from a district or local mine office. The district court found that the plaintiffs worked in and about the mines and, despite the exemption language in the agreement, found that they did not hold positions expressly exempted under the agreement.
 
 
 16
 The court's finding, however, ignores reality for it is undisputed that the plaintiffs were not members of the collective bargaining unit represented by the UMWA and hence, were not covered by the UMWA wage agreements until 1966 when UMWA District 28 organized Local 1470 to represent the positions of weighman, sampler and technician, bringing the plaintiffs' positions within those covered by the UMWA bargaining agreement.[1] Since they were not within the bargaining unit until 1966 it necessarily follows that until that time they held positions exempted from coverage under the agreement. To hold otherwise would be to enlarge the scope of the collective bargaining unit beyond its normal scope to include employees who were not members of the bargaining unit--employees for whom the Union had no authority to bargain under the collective bargaining agreement. Thus, the Trustees properly denied credit to the plaintiffs for their employment with Clinchfield prior to their inclusion in the UMWA collective bargaining unit for which the Pension Plan was created and maintained.
 
 
 17
 According to Article VIII(B) of the 1974 Pension Plan the Trustees have full and final determination with respect to all issues concerning eligibility for benefits. Thus, they "enjoy wide discretion in determining eligibility for benefits under their trust.... Here, the instrument creating the Trust expressly empowered the Trustees to interpret it. They defined the critical terms ... long before this controversy arose." United Mine Workers of America v. Allied Corp., et al., 765 F.2d 412, 416-17 (4th Cir.1985). The Trustees' interpretation of the 1974 Pension Plan "should be upheld even if the court disagrees with it, so long as the interpretation is rationally related to a valid plan purpose and not contrary to the plain language of the plan." Gaines v. Amalgamated Insurance Fund, 753 F.2d 288, 289 (3d Cir.1985). This deferential standard is appropriate because administrative responsibility should rest "with those whose experience is daily and continued, not with judges whose exposure is episodic and occasional." Berry v. Ciba-Geigy Corp., 761 F.2d 1003, 1006 (4th Cir.1985).
 
 
 18
 As previously noted, the UMWA Welfare and Retirement Funds were established and are maintained through collective bargaining by the UMWA, which did not represent the plaintiffs until 1966. The 1974 plan requires that persons be classified under the applicable wage agreement. Since the applicable wage agreement only covered members of the UMWA bargaining unit, the Trustees' requirement that persons be members of the bargaining unit for periods of benefit accrual is rationally related to the plan and consistent with its language. Indeed, the bargaining unit requirement is implicit in the Pension Plan's eligibility criteria for it seems obvious that a union has no authority to contract for the conditions of employees not within the bargaining unit that it represents. Accordingly, the Trustees did not act arbitrarily and capriciously in adopting the requirement, nor in their application of the requirement.
 
 
 19
 Mullins v. Mullins, 537 F.Supp. 840 (W.D.Va.1982), aff'd mem., 701 F.2d 166 (4th Cir.1983), does not require a different result because the facts of that case are readily distinguishable. The only difference we need mention is that there, it was undisputed that Mullins was a member of the bargaining unit represented by the UMWA and hence, covered by the UMWA wage agreements, so long as he worked in or about the mines; here, to the contrary, it is undisputed that the plaintiffs were not within the bargaining unit covered by the UMWA wage agreements until 1966. Thus, our decision today is reconcilable with Mullins.
 
 
 20
 Under the circumstances, we believe the Trustees reached the only conclusion possible--the plaintiffs' positions were not classified before 1966. Having found that the bargaining unit requirement was rationally related to the Plan's purpose and necessarily followed from the language of the applicable wage agreement, and that the Trustees' decision was within their authority, we reverse the judgment of the district court and affirm the Trustees' decision denying benefit accrual credit for the plaintiffs' pre-1966 employment with Clinchfield.
 
 The judgment of the district court is
 
 21
 REVERSED.
 
 
 
 [1]
 The plaintiffs did argue for the first time on appeal that they were within the collective bargaining unit covered by the wage agreements because they worked in and about the mines and were not expressly exempted from coverage. We, however, have no jurisdiction to consider arguments not raised below. In any event, the argument clearly lacks support in the facts