ASBESTOS WORKERS SYRACUSE PENSION FUND, by Charles M. COLLINS, as Chairman, and R. Edward Parkes, as Secretary, Plaintiff,

v.

M.G. INDUSTRIAL INSULATION COMPANY, INC. Defendant.

Civ. A. No. 94–CV–572(RSP).

United States District Court, N.D. New York.

Feb. 10, 1995.

Blitman & King (Jennifer A. Clark, of counsel), Syracuse, NY, for plaintiff.

Bond, Schoeneck & King (Thomas G. Eron, of counsel), Syracuse, NY, for defendant.

### MEMORANDUM–DECISION AND ORDER

POOLER, District Judge.

### INTRODUCTION

Plaintiff Asbestos Workers Syracuse Pension Fund ("Asbestos Fund") moves for summary judgment against defendant M.G. Industrial Insulation Company, Inc. ("M.G. Industrial") in this action under the Employee Retirement Income Security Act ("ERISA") and the Multiemployer Pension Plan Amendments Act of 1980 ("MPPAA") to collect $56,462.43 in allegedly delinquent withdrawal liability payments owed to Asbestos Fund. M.G. Industrial cross-moves for summary judgment on the grounds that Asbestos Fund lacked capacity to sue because the fund's trustees did not properly authorize this lawsuit. Asbestos Fund contends that M.G. Industrial waived this argument by not raising it in the answer to plaintiff's complaint.

However, we find that the capacity defense not only is timely but also is successful on the facts before us. Accordingly, we do not address the issue of whether M.G. Industrial is required to submit withdrawal liability payments to Asbestos Fund.

### BACKGROUND

The following facts are not in dispute. M.G. Industrial, an insulation contractor located in Baldwinsville, New York, was party to a collective bargaining agreement between the Syracuse Insulation Contractors Association and the International Association of Heat and Frost Insulators and Asbestos Workers Local No. 30 (the "union"). Under this agreement, M.G. Industrial was obligated to contribute to a fringe benefits plan administered by Asbestos Fund for the benefit of M.G. Industrial's union employees. The Asbestos Fund plan generally was controlled by a committee consisting of three employer-trustee and three union-trustee representatives (the "trustees") acting pursuant to a Trust Agreement. The president of M.G. Industrial, Robert L. Gass, was an employer trustee.

The collective bargaining agreement between M.G. Industrial and the union expired on April 30, 1993. On May 6, 1993, M.G. Industrial ended its relationship with the union and accordingly terminated its obligation to contribute to the Asbestos Fund benefits plan. On October 18, 1993, Asbestos Fund notified M.G. Industrial that it was obligated to pay the fund a "withdrawal liability" of $46,818 pursuant to 29 U.S.C. § 1399. Asbestos Fund required two payments, of $23,914 due on January 1, 1994, and of $23,295 due on April 1, 1994. By letter dated January 14, 1994, M.G. Industrial appealed the assessment of its withdrawal liability to the trustees. The trustees denied the appeal at a March 24, 1994, meeting and so informed M.G. Industrial by letter dated April 12, 1994. Four trustees—one employer trustee and three union trustees—attended the March 24th meeting, where they also unanimously authorized this litigation.

Because M.G. Industrial failed to make its two payments of the withdrawal liability, Asbestos Fund commenced this lawsuit on May

4, 1994. On June 10, 1994, M.G. Industrial began an arbitration proceeding to resolve the questions of whether it owed Asbestos Fund withdrawal liability payments and if so, what the payment amounts should be. At the time the parties filed their motions for summary judgment, two arbitration hearings had taken place but the proceeding was incomplete.

Subsequent to the initiation of this lawsuit, on June 2, 1994, Asbestos Fund appointed another employer trustee. By documents dated October 26, 1994, this new trustee, as well as the four trustees that had attended the March 24th meeting, "unanimously agree[d] to ratify the action of the Trustees at the March 24, 1994 meeting, unanimously agree[d] to deny M.G. Industrial Insulation Company, Inc.'s appeal, and unanimously agree[d] to authorize Fund Counsel to pursue all avenues to collect the withdrawal liability, including the existing action in Federal Court to collect the full amount of the withdrawal liability, plus interest, liquidated damages, attorneys' fees and costs." Pl.Reply Exhibit D. Two copies of this ratification document were submitted to the court. One copy is signed by the four pre-existing trustees, and another copy is signed by the newly appointed trustee. All five signatures are dated October 26, 1994.

Oral argument took place on December 5, 1994. Counsel for Asbestos Fund argued that the pending arbitration was irrelevant to M.G. Industrial's obligation to make its interim withdrawal liability payments. Counsel for M.G. Industrial denied this interpretation of the law. Moreover, the defendant argued on its cross-motion that we should not reach the merits of the parties' dispute because the trustees violated the Trust Agreement when they authorized this litigation. Asbestos Fund responded that this authorization defect, if it existed, was cured on October 26, 1994, by the trustees' ratification. We permitted the parties to file supplemental letter briefs with respect to whether the trustees' ratification was effective.

## DISCUSSION

### I. Summary Judgment Standard

■ Summary judgment shall enter if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). The materiality of facts must be determined with reference to the governing substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). The moving party has the initial responsibility of demonstrating that there is no genuine issue of material fact to be decided. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). As to any issue on which the moving party does not have the burden of proof, the moving party may satisfy its burden by "pointing out to the district court ... that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325, 106 S.Ct. at 2554.

■ Once the moving party has satisfied its burdens, its adversary is compelled to respond. "If the movant satisfies the burden of establishing that there is no genuine issue of material fact, then the burden shifts to the nonmovant to proffer evidence demonstrating that a trial is required because a disputed issue of material fact exists." *Weg v. Macchiarola*, 995 F.2d 15, 18 (2d Cir.1993). In satisfying this burden, the non-moving party "may not rest upon the mere allegations or denials of the adverse party's pleading, but ... must set forth specific facts showing that there is a genuine issue for trial." Fed. R.Civ.P 56(e). The opponent of summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). "[M]erely colorable" evidence will not suffice as a basis for opposing summary judgment. *Anderson*, 477 U.S. at 249–50, 106 S.Ct. at 2510–11.

■ In weighing a motion for summary judgment, the court must accept as true the nonmoving party's evidence and make "all justifiable inferences" in the nonmoving party's favor. *Id.* at 255, 106 S.Ct. at 2513–14. The evidentiary standard governing proof at trial determines how the court must assess

the evidence in deciding whether the summary judgment standard has been met. *Id.* at 254–55, 106 S.Ct. at 2513–14. In an ordinary civil case, such as this one, where plaintiffs must prove their case by a preponderance of the evidence, the determinative standard is "whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict." *Id.* at 252, 106 S.Ct. at 2512.

## II. Capacity to Sue

We first address M.G. Industrial's dispositive cross-motion. If, as defendant contends, the Asbestos Fund trustees did not properly authorize this litigation, then Asbestos Fund lacked capacity to sue and we need not address plaintiff's claim regarding the lawsuit's substance, i.e., collection of the withdrawal liability. As the moving party, M.G. Industrial bears the burden of proof on this issue. M.G. Industrial contends that as a matter of law, the trustees' decision to initiate this lawsuit was invalid because it was made in violation of the Trust Agreement. Therefore, defendant reasons, the litigation must be dismissed. In the alternative, defendant contends that an issue of fact exists regarding the effect of any ratification by the trustees of their invalid decision on March 24th to authorize this lawsuit.

### A. Rule 9(a) Waiver

As a preliminary matter, Asbestos Fund argues that M.G. Industrial waived its opportunity to contest plaintiff's capacity to sue because the defendant did not raise this argument in its answer to the complaint. Pursuant to Rule 9(a) of the Federal Rules of Civil Procedure, a party desiring to challenge its opponent's capacity to sue must raise the issue "by specific negative averment, which shall include such supporting particulars as are peculiarly within the pleader's knowledge." Fed.R.Civ.P. 9(a). M.G. Industrial has moved pursuant to Rule 15(a) of the Federal Rules of Civil Procedure for leave to amend its answer to conform to its cross-motion regarding plaintiff's lack of capacity to sue.

 Asbestos Fund correctly notes that the lack of capacity defense can be waived.

Although plaintiff contends that waiver occurs if the capacity defense is not raised in the defendant's answer, the relevant case law is less rigorous. For example, a Southern District of New York court held that the defense is waived if it is not "raised in a timely manner, i.e. at the outset of a lawsuit." *Pressman v. Estate of Steinvorth,* 860 F.Supp. 171, 176 (S.D.N.Y.1994). The district court also held that the defendant waived its capacity defense by waiting more than seven years before raising it but nonetheless decided the issue's merits in an alternative holding. *Id.* at 176–77. Similarly, in a 1979 action, an Eastern District of New York court held that the capacity defense is waivable but nonetheless decided the merits of a litigant's capacity challenge made at least three years into the litigation. *Windbourne v. Eastern Air Lines, Inc.,* 479 F.Supp. 1130, 1155–57 (E.D.N.Y.1979), *rev'd on other grounds,* 632 F.2d 219, 225 (2d Cir.1980). Consequently, the fact that M.G. Industrial did not raise the capacity defense in its answer is not dispositive.

 Under the appropriate analysis, we may consider the capacity defense even though it was not contained in defendant's answer as long as no prejudice to plaintiff results. 5 Charles A. Wright and Arthur R. Miller, Federal Practice and Procedure § 1295 (1990); *see also Gardner v. Parson,* 874 F.2d 131, 139 n. 12 (3d Cir.1989). By permitting defendants to raise the capacity defense early in the litigation but not exclusively in their answers, we recognize the liberal amendment policy of Fed.R.Civ.P. 15, which allows a defendant to conform its pleadings to a capacity defense raised after the initial answer is filed. *See* Wright & Miller, *supra,* at § 1295; *see also MTO Maritime Transp. Overseas, Inc. v. McLendon Forwarding Co.,* 837 F.2d 215, 218 (5th Cir. 1988) (affirming district court's decision to allow litigant to amend pleadings and add capacity defense on the eve of trial). An objection raised in the early stages of litigation and prior to the onset of trial is far less likely to cause prejudice than one raised on the eve of trial. *See* Wright & Miller, *supra,* at § 1295. For example, a decision tipped in favor of waiver where the defendant raised

the capacity defense in a final pre-trial conference two weeks before the scheduled trial date. *Wagner Furniture Interiors, Inc. v. Kemner's Georgetown Manor, Inc.,* 929 F.2d 343, 345–46 (7th Cir.1991). Another aspect of possible prejudice is whether defendant's delay in raising the capacity defense deprives plaintiff of its day in court due to the applicable statute of limitations. Wright & Miller, *supra,* at § 1295.

■■■■ Based on a consideration of the factors relevant to determining waiver and prejudice, we hold that M.G. Industrial has not waived its capacity defense and that no prejudice will result to Asbestos Fund by our consideration of the issue's merits. First, defendant raised the capacity issue only six months after commencement of this litigation in May 1994. Unlike the defendants in *Pressman* and *Windbourne,* M.G. Industrial has not raised this defense after years of discovery and trial preparation. Second, the capacity issue has been fully briefed and argued by the parties. Finally, plaintiff will not be prejudiced because M.G. Industrial does not assert this defense after the expiration of the applicable statute of limitations.[1] Consequently, we will consider M.G. Industrial's capacity defense. *See Gardner,* 874 F.2d at 139 n. 12 (holding that defendants did not waive capacity defense under Rule 9(a) because all parties had the opportunity to brief and argue the issue and plaintiff's interests would not be prejudiced). We also grant M.G. Industrial's motion to amend its pleading to conform with the assertion of its capacity defense. *Id.*

## B. Trustee Authorization

Both Asbestos Fund and M.G. Industrial agree that any action of the trustees is governed by the fund's Trust Agreement. In addition, both parties agree that on March 24, 1994, four trustees were present at a meeting during which they voted unanimously to authorize this litigation. However, the

parties sharply dispute whether Robert L. Gass, the president of M.G. Industrial, remained an employer trustee on March 24th because at that time M.G. Industrial was no longer a party to the collective bargaining agreement that triggered M.G. Industrial's contribution obligations. The legal question of Mr. Gass' trustee status can be answered through analysis of undisputed facts and the Trust Agreement's terms. Once Mr. Gass' trustee status is determined, legal interpretation of the Trust Agreement terms resolves the dispute concerning plaintiff's capacity to sue.

### 1. Legal Standard

■■■■ Under ERISA, trustees are fiduciaries who are bound to administer the benefits plan solely in the interest of plan participants and beneficiaries. *See* 29 U.S.C. § 1104(a) (stating "prudent man standard of care"). The duties of the trustees are further defined by the Trust Agreement they are charged with administering. *Id.* § 1104(a)(1)(D). The trustees must follow the terms of their Trust Agreement. *Alfarone v. Bernie Wolff Constr. Corp.,* 788 F.2d 76, 79 (2d Cir.), *cert. denied,* 479 U.S. 915, 107 S.Ct. 316, 93 L.Ed.2d 289 (1986); *see also Truckmen's & Warehousemen's Ass'n of Rochester v. New York State Teamsters Conference Pension and Retirement Fund,* 751 F.Supp. 351, 358 (W.D.N.Y.1990) (holding that trustees must comply with terms of trust, not collective bargaining agreement under which employers contribute to benefits plan).

■■■■ Asbestos Fund contends that the trustees have broad discretion in construing the terms of the Trust Agreement. Where a trust document gives trustees "discretionary authority to determine eligibility for benefits or to construe the terms of the plan," the court may review those decisions under the arbitrary and capricious standard, but court review of such decisions is *de novo* if the plan

---

1. Under the MPPAA, a plaintiff must bring its action to collect delinquent withdrawal liability payments within six years after the date on which the defendant defaulted on its payments under the post-withdrawal schedule of withdrawal liability payments. 29 U.S.C. § 1451(f)(1); *see also In re Cardon Realty Corp.,* 172 B.R. 182, 187

(Bankr.W.D.N.Y.1994); *Retirement Fund of the Fur Mfg. Indus. v. Strassberg and Tama, Inc.,* 1989 WL 87483 *2 (S.D.N.Y.1989). Therefore, if M.G. Industrial is successful in its capacity defense, Asbestos Fund will have ample time to properly authorize and initiate a collection action.

does not explicitly give trustees discretionary authority. *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 114–15, 109 S.Ct. 948, 956–57, 103 L.Ed.2d 80 (1989); *see also Seff v. National Org. of Indus. Trade Unions Ins. Trust Fund*, 781 F.Supp. 1037, 1040 (S.D.N.Y.1992). However, the Second Circuit appears to have drawn a distinction between trustee decisions concerning benefits and administrative determinations balancing the interests of plan beneficiaries and third parties. In the latter case, the trustees are held to ERISA's "strict prudent person standard" and not the more lenient arbitrary and capricious standard. *John Blair Communications, Inc. Profit Sharing Plan v. Telemundo Group, Inc. Profit Sharing Plan*, 26 F.3d 360, 369 (2d Cir.1994). In *John Blair*, the court reviewed under this stricter standard a decision by trustees to treat a pension fund surplus as an employer contribution to the employer's benefit rather than credit the funds to the plan participants. *Id.* at 368. The Second Circuit rejected the *John Blair* trustees contention that the plan document's provision giving them discretion to interpret its terms required use of an arbitrary and capricious standard. *Id.*

▮ The Asbestos Fund trustees' decision to authorize the instant litigation balances the interests of plan participants and a third party, M.G. Industrial, but the action does not fall squarely within the pattern contemplated by *John Blair* because the decision to authorize a collection action was intended to benefit the plan participants, not the third-party employer. The Asbestos Fund trustees' decision can be characterized best as a discretionary administrative decision warranting greater deference by the court. *See Ganton Technologies, Inc. v. National Indus. Group Pension Plan*, 865 F.Supp. 201, 205 (S.D.N.Y.1994) (applying arbitrary and capricious standard of review to trustees' decision regarding transfer of plan assets where decision affected interest of plan participants).

▮ The Trust Agreement gives trustees "exclusive authority and discretion" to, among other things, "interpret the provisions of the Trust Agreement governing the operation of the Plan." Pl.Exhibit D, Art. 6

§ 21. Nonetheless, this discretion is not unlimited. Trustees may implement administrative rules governing the benefits fund as long as those rules are not "arbitrary and capricious." *Truckmen & Warehousemen*, 751 F.Supp. at 358. Where the trustees act inconsistently with the plain words of the Trust Agreement, or by their interpretation make some of the agreement's provisions superfluous, their actions may well be arbitrary and capricious. *Miles v. New York State Teamsters Conference Pension and Retirement Fund Employee Pension Benefit Plan*, 698 F.2d 593, 599 (2d Cir.), *cert. denied*, 464 U.S. 829, 104 S.Ct. 105, 78 L.Ed.2d 108 (1983); *Cote v. Battenfeld Grease & Oil Corp. of New York*, 657 F.Supp. 863, 865 (W.D.N.Y.1987). Trustees are permitted to make reasonable and rational interpretations of plan provisions. *Miles*, 698 F.2d at 599, 601.

Consequently, we review the trustees' decision to authorize this litigation under the more lenient arbitrary and capricious standard. As explained more fully below, the trustees' action fails to pass even this mild scrutiny because they acted inconsistently with the plain terms of the Trust Agreement.

### 2. Trustee Status of Mr. Gass

▮ The first legal issue concerns whether William L. Gass, the employer trustee representing M.G. Industrial, lost his position when M.G. Industrial withdrew from the collective bargaining agreement. Asbestos Fund contends that Mr. Gass was disqualified to act as an employer trustee because the Trust Agreement requires "employers" to be parties to the collective bargaining agreement with the union. M.G. Industrial responds that Mr. Gass remained a trustee on March 24th or, in the alternative, that an issue of fact exists regarding Mr. Gass' trustee status.

The Trust Agreement fails to define the term "employer trustee." The Trust Agreement defines the term "employers" as employers that are parties to the Trust Agreement and "any other employers who by collective bargaining contracts with the Union are required to make periodic payments to a fund for the purpose of providing pensions

for the benefit of their employees." Pl.Exhibit D, Art. 1 § 2. The Trust Agreement also defines the term "trustees" as the "Union Trustees and the Employer Trustees, collectively, designated in Section 2 of Article IV of this Agreement together with their successors designated in the manner provided by Section 12 of Article V of this Agreement." *Id.* Art. 1 § 3. Section 2 of Article 4 specifically names Robert Gass as an employer trustee. Section 12 of Article 5 provides that "[i]n the event of the termination of the designation of a Trustee, or the resignation, death, disqualification, disability or refusal to act of any Trustee ..., a successor to an Employer Trustee shall be named and appointed by a majority of the Employers then parties to this Agreement...." *Id.* Art. 5 § 12.

Asbestos Fund contends that implicit in the definitions of "employers" and "trustees" is the conclusion that once a party to the Trust Agreement, i.e., M.G. Industrial, ceases to be an "employer" as it is defined therein, then that party's representative, i.e., Mr. Gass, ceases to be an employer trustee. Therefore, plaintiff reasons, because M.G. Industrial terminated its relationship with the union on May 6, 1993, Mr. Gass ended his service as an employer trustee on that date. This position has a certain superficial appeal. However, it is inconsistent with the plain language of the Trust Agreement.

As noted, the Trust Agreement specifically names Mr. Gass as an employer trustee. The Trust Agreement also contains explicit provisions regarding the term of service for trustees. Specifically, the agreement states that "[e]ach Trustee shall continue to serve as such until his death, incapacity, resignation or removal as herein provided." Pl.Exhibit D, Art. 5 § 9. None of these terms is further defined. However, the Trust Agreement provides that the "[e]mployers may terminate the designation of an Employer Trustee by filing with the remaining Trustees an instrument in writing signed by a majority of all Employers then parties to this Agreement." *Id.* Art. 5 § 10. The record

contains no evidence of a written termination regarding Mr. Gass. Furthermore, the Trust Agreement states that "[a]ny Trustee may resign by instrument in writing executed for that purpose and delivered to the remaining Trustees." *Id.* Art. 5 § 11. Again, the record contains no evidence of a written resignation by Mr. Gass. Finally, the Trust Agreement requires employer trustee vacancies to be filled "within 60 days by an instrument in writing, signed by a majority of all the Employers...." *Id.* Art. 5 § 12. Again, the record contains no written evidence that Mr. Gass' vacancy, if it existed, was filled within 60 days of May 6, 1993.[2] Moreover, if Mr. Gass was not an employer trustee, then Asbestos Fund violated the provision of the Trust Agreement stating that "at all times there shall be at least two Employer Trustees and two Union Trustees" because of a pre-existing resignation by another employer trustee. Pl.Exhibit D, Art. 5 § 15. This violation is avoided by our interpretation of the Trust Agreement holding that Mr. Gass remained an employer trustee. Because Mr. Gass was not removed as provided by the Trust Agreement, he remained an employer trustee. *Cf. International Union of Bricklayers and Allied Craftsmen Local No. 5 v. Hudson Valley Dist. Council Bricklayers and Allied Craftsmen Joint Benefit Funds,* 858 F.Supp. 373, 375–76 (S.D.N.Y.1994) (holding that trustees serve pursuant to the wishes and governing documents of the appointing authority, here, the international union, and trustees have no authority to extend their terms).

On this cross-motion for summary judgment, movant M.G. Industrial by relying on the plain language of the Trust Agreement has satisfied its burden and demonstrated that Mr. Gass was never terminated as an employer trustee. *See Celotex,* 477 U.S. at 323, 106 S.Ct. at 2552–53. In response, nonmovant Asbestos Fund has offered no evidence other than conclusory allegations regarding Mr. Gass' trustee status. Given the Trust Agreement's specific requirements

**2.** There is written evidence that an employer trustee vacancy was filled on June 2, 1994, by the appointment of Alina LoFaso. Pl.Reply Exhibit C. This appointment apparently filled the long-existing vacancy created by the written resignation on March 26, 1993, by employer trustee William J. Harvey. Pl.Reply Exhibit A.

that terminations, resignations and new appointments all be in writing, such evidence, if it existed, would not be difficult to produce. We hold, therefore, that for the purposes of the defendant's cross-motion, Mr. Gass remained an employer trustee.

### 3. The March 24th Authorization

■ The trustee status of Mr. Gass is critical to the ultimate determination of whether this lawsuit was authorized in accordance with the terms of the Trust Agreement. M.G. Industrial contends that the action was not properly authorized because two employer trustees were not present at the March 24th meeting at which M.G. Industrial's appeal was rejected and this lawsuit approved. Asbestos Fund responds that it was impossible to require the attendance of two employer trustees because only one employer trustee was in office on March 24th. Asbestos Fund's argument relies on the supposition that Mr. Gass was no longer a trustee, a position we have rejected as inconsistent with the Trust Agreement's terms and thus arbitrary and capricious.

According to the Trust Agreement, "[a]t least two Employer Trustees and two Union Trustees must be present" at a regular meeting where "any action [is] taken by the Trustees pursuant to this Agreement." [3] Pl.Exhibit D, Art. 5 § 17(a). However, as Asbestos Fund points out, the Trust Agreement also states that "[n]o vacancy or vacancies in the office of Trustee shall impair the power of the remaining Trustees ... to administer the Fund." Id. Art. 5 § 14. Both defendant and plaintiff agree that only one employer trustee attended the March 24th meeting.[4]

■ If, as Asbestos Fund would have us hold, only one employer trustee was in office on March 24th, then the trustees violated the Trust Agreement terms requiring maintenance of at least two employer trustees at all times and the filling of vacancies within 60 days. In contrast, this lawsuit could have

been authorized in accordance with the terms of the Trust Agreement even if Mr. Gass remained an employer trustee on March 24th. At a regular meeting such as that which took place on March 24th, at least two employer trustees must be present, but action is passed with a simple majority vote. Id. Art. 5 § 17(a). Therefore, if Mr. Gass had attended the meeting and either voted in favor of M.G. Industrial or abstained due to his possible conflict of interest, the remaining four votes against M.G. Industrial were a sufficient majority to constitute effective action. We note that Mr. Gass' possible conflict of interest was not an insurmountable problem. If the conflict between Mr. Gass' competing roles as employer and trustee resulted in a breach of fiduciary duty, he could be held accountable for that breach. Ches v. Archer, 827 F.Supp. 159, 169–70 (W.D.N.Y. 1993). Consequently, this lawsuit easily could have been authorized in accordance with the Trust Agreement terms, but it was not. The trustees' action on March 24th thus was arbitrary and capricious.

### 4. The October 26th Ratification

■ Perhaps recognizing that the trustee actions of March 24th were not in accordance with the Trust Agreement, the Asbestos Fund trustees on October 26, 1994, attempted to ratify the earlier action. Asbestos Fund contends that this ratification cures any defects. M.G. Industrial responds that this action, too, violated the plain terms of the Trust Agreement.

Assuming that ratification is permissible under ERISA, five of the trustees on October 26th signed a statement ratifying the action of the trustees at the March 24th meeting. However, this action was not completed at a meeting. The Trust Agreement permits trustees to take action "in writing without a meeting provided, however, that in such cases there shall be *unanimous* written concurrence by all of the Trustees then in office, including at least two Employer and

---

**3.** The only exception to this requirement concerns termination of the trust itself. Pl.Exhibit D, Art. 7 § 1.

**4.** Interestingly, Alina LoFaso, who was appointed an employer trustee in June 1994 and signed the October 26th ratification, attended the March 24th meeting "as a prospective Employer Trustee." Pl.Reply Exhibit B.

142

two Union Trustees." Pl.Exhibit D, Art. 5 § 17(c) (emphasis added). As already discussed, Mr. Gass remained an employer trustee because he never submitted a written resignation or was removed by written instrument as required by the Trust Agreement. Because Mr. Gass failed to sign the purported ratification, the action was not unanimous and violated the Trust Agreement's explicit terms. Thus, the trustee's attempt to ratify the March 24th authorization is invalid as arbitrary and capricious. This apparently harsh result easily could have been avoided if the trustees had complied with the terms of the Trust Agreement, which allows the chairman of the trustees or any three trustees to call a meeting at any time. *Id.* Art. 5 § 17(b). At such a meeting, the simple majority vote, rather than unanimous action, would have been sufficient to ratify the March 24th action.

### III. Defendant's Payment Obligations

Because we grant defendant's cross-motion with respect to Asbestos Fund's capacity to sue, this lawsuit must be dismissed. We accordingly do not address the merits of Asbestos Fund's summary judgment motion, which is denied. We note that plaintiff is free to institute another action to collect M.G. Industrial's withdrawal liability as long as that action is properly authorized by Asbestos Fund trustees. We also note that the merits of the parties' dispute may be conclusively resolved by their pending arbitration proceedings.

### CONCLUSION

Because this action was authorized improperly by the Asbestos Workers trustees, defendant's cross-motion for summary judgment is GRANTED and this action is DISMISSED. The motion of Asbestos Workers for summary judgment accordingly is DENIED.

IT IS SO ORDERED.