Arthur J. MOATS

v.

The **UNITED MINE WORKERS OF AMERICA HEALTH AND RETIREMENT FUNDS, Appellant.**

No. 92–3067.

United States Court of Appeals,
Third Circuit.

Submitted Under Third Circuit Rule 12(6)
August 7, 1992.

Decided Nov. 12, 1992.

---

Glenda S. Finch, Angela Kennedy, and Regina M. Pizzonia, UMWA Health and Retirement Funds, Washington, DC, for appellant.

Cheryl A. Ignasiak, Ogg, Jones, DeSimone & Ignelzi, Pittsburgh, PA, for appellee.

Before: GREENBERG, ALITO, and ALDISERT, Circuit Judges.

## OPINION OF THE COURT

ALITO, Circuit Judge:

This is an appeal by the Trustees of the United Mine Workers Health and Retirement Funds (the "Trustees") from a district court order granting summary judgment to Arthur J. Moats, a beneficiary who claimed that he was entitled to a disability pension because he was injured in a "mine accident." In granting summary judgment for Moats, the district court held that the Trustees' decision denying Moats's claim was arbitrary and capricious. We hold that the Trustees' decision was not arbitrary or capricious, and we therefore reverse and remand for entry of an order granting summary judgment to the Trustees.

## I.

Moats was employed as a roof bolter for Emerald Mine Corporation in Waynesburg, Pennsylvania. One day in May 1985, Moats completed his shift of work and walked to his automobile, which was parked in a lot owned by his employer. While driving through the lot toward the exit, his vehicle collided with a coal truck owned by a coal hauling company working for his employer. Moats was injured and eventually collected worker's compensation and Social Security disability insurance benefits.

Moats applied for a disability pension from the United Mine Workers 1974 Pension Plan (the "UMW Plan"), which provides disability benefits for beneficiaries disabled in a "mine accident." Moats's application was denied on the ground that his automobile accident was not a "mine accident" within the meaning of the Plan. Moats filed a request for review, and a hearing was held before a hearing officer, but the hearing officer also concluded that Moats had not been injured in a "mine accident." The hearing officer cited two questions and answers (Q & As 252 and 288) contained in the Funds' policy interpretation guidelines.

Moats then began this action in the United States District Court for the Western District of Pennsylvania, pursuant to ERISA, 29 U.S.C. § 1132, seeking benefits due under the Plan. On cross-motions for summary judgment, the district court entered summary judgment for Moats, holding that the Trustees' denial of benefits was arbitrary and capricious. Noting that Moats "collided on coal company property with a truck that was engaged in hauling

coal for [his] employer," the district court reasoned that there was "a significant connection between the accident in which [Moats] was injured and his employment ..., and that it would be unreasonable not to consider this accident as an accident in the course of [Moats's] employment." App. at 331.

The district court also relied on its own prior decision in *Thomas v. United Mine Workers 1974 Benefit Plan and Trust*, Civ. Action No. 89–02371 (Oct. 31, 1990), which we affirmed by judgment order, 935 F.2d 1282, No. 90–3803 (3d Cir. May 21, 1991). In that case a miner was injured when he slipped on the ice and fell as he walked to his car in his employer's parking lot. The Trustees concluded that Thomas had not been injured in a "mine accident," but the district court held that this decision was arbitrary and capricious. The court relied heavily on a letter from the Funds' general and associate counsel to its director regarding still another disability claim.

This third claim involved a miner, Donald Harless, who was injured when he slipped on the ice and fell while walking from the bathhouse, where he had changed into his work clothes, to the lamphouse, where he was required to pick up his lamp before beginning his shift. This memorandum concluded that Harless had been injured in a "mine accident" because his accident occurred after his arrival at work and while he was preparing for the start of his work day at the mine. The memorandum added that this construction of the term "mine accident" was consistent with a rule applied in worker's compensation cases under which injuries suffered while going to and from work are compensable if they occur close to the job site, on company property, and within a reasonable time of the beginning or end of the work day. The court concluded that Thomas's case fell within this rule. Moreover, because the court could find "no basis for distinguishing between Mr. Thomas and Mr. Harless," the court held that the denial of benefits to Thomas was arbitrary and capricious.

App. at 330. Similarly, in the present case, because the court could not distinguish Harless's and Thomas's accidents from Moats's, the court granted summary judgment for Moats. The Trustees then took this appeal.

## II.

■ A. When a benefits plan gives an administrator discretion in determining eligibility, a district court may overturn a decision of the administrator only if it is arbitrary or capricious. *Firestone Tire and Rubber Co. v. Bruch*, 489 U.S. 101, 111, 115, 109 S.Ct. 948, 954, 956, 103 L.Ed.2d 80 (1989); *Stoetzner v. United States Steel Corp.*, 897 F.2d 115, 119 (3d Cir.1990). Here, the district court held—and both parties agree—that the plan gives the Trustees such discretion and that their decision denying Moats's claim was thus subject to review in the district court under the arbitrary and capricious standard. The Fourth Circuit has reached the same conclusion regarding the UMW Plan (*Boyd v. Trustees of the United Mine Workers Health and Retirement Fund*, 873 F.2d 57, 59 (4th Cir.1989)), and we also agree. Consequently, the question before us is whether the district court was right in holding that the Trustees' decision was arbitrary and capricious.[1]

The Supreme Court stated, albeit in another context, that a decision is arbitrary and capricious if it is "not rational and based on consideration of the relevant factors." *FCC v. National Citizens Comm. for Broadcasting*, 436 U.S. 775, 803, 98 S.Ct. 2096, 2116, 56 L.Ed.2d 697 (1978). The Court added that judicial review under this standard must be " 'searching and careful' " but that the court may not "substitute its judgment for that of the [decisionmaker]." *Id.*, quoting *Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402, 416, 91 S.Ct. 814, 824, 28 L.Ed.2d 136 (1971). *See also Motor Vehicle Mfrs. Ass'n v. State Farm Mutual Automobile Ins. Co.*, 463 U.S. 29, 43, 103 S.Ct. 2856, 2867, 77 L.Ed.2d 443 (1983). In a case

---

**1.** We review the district court's decision under a plenary standard. *Gaines v. Amalgamated In-* *surance Fund,* 753 F.2d 288, 289–290 (3d Cir. 1985).

involving the interpretation of a provision of a pension plan, we wrote that under the arbitrary and capricious standard, the trustees' interpretation "should be upheld even if the court disagrees with it, so long as the interpretation is rationally related to a valid plan purpose and not contrary to the plain language of the plan." *Gaines v. Amalgamated Insurance Fund,* 753 F.2d 288, 289 (3d Cir.1985). Applying these principles, we hold that the Trustees' decision denying Moats's application was not arbitrary and capricious.

■ B. We begin with the language of the Plan itself, which provides that a miner is eligible for a disability pension only if his injury stems from a "mine accident." The Plan does not define the term "mine accident."

If this Plan provision is viewed in isolation, without considering the policy interpretation guidelines to which we previously referred and to which we will return, was it arbitrary and capricious for the Trustees to conclude that Moats's automobile accident was not a "mine accident"? We think not. Moats was not injured in a mine or while working in a mine facility. He was injured while driving home from work. Consequently, the Trustees' decision that his accident was not a "mine accident" did not violate the plain meaning of the Plan's language. *Gaines,* 753 F.2d at 289. Moreover, the Trustees' decision was rationally related to a valid plan purpose—namely, the preservation of Plan resources for accidents more closely related to actual employment. In applying the term "mine accident" to accidents involving miners travelling to and from work, the Trustees obviously had to draw a line somewhere— whether at the miners' own doorsteps, at the entrance to a mine or mine facility, or at some point in between. We cannot say that the point at which the Trustees chose to draw the line—prior to the beginning of a miner's trip home by automobile—was irrational.

The Trustees' application of the Plan language in this case also finds strong support in policy interpretation guidelines (in the form of questions and answers) that the Trustees had properly issued well before Moats's accident. *See District 17 v. Allied Corp.,* 765 F.2d 412, 417 (4th Cir. 1985). Q & A 252 states that a miner is eligible for a disability pension only if his disability "occurred in the course of the miner's employment." Q & A 130 provides that absent special circumstances "[a] miner injured in an auto accident while on his way to work at the mine" would not be eligible for a disability pension but that a truck driver injured in a highway accident while hauling coal would be eligible. The Q & A explains that "[t]he term 'mine accident' is interpreted to mean an accident in the normal course of a participant's classified employment."

Finally, Q & A 288 addresses a hypothetical case almost identical to Moats's. This Q & A states:

> Q. A miner, either going to work or returning from work at the mine, is killed in an automobile accident on coal company property. Can this be considered as a mine accident death, thereby qualifying the surviving spouse for the $10,000 payment plus $100 a month for life or until remarriage?

> A. No, the accident resulting in the miner's death must have occurred as a direct result of his performance of classified work for a signatory Employer in order for the surviving spouse to qualify for these benefits. The spouse will, however, qualify for the $7,500 death benefit.

In light of these Q & As, it is clear that the Trustees' decision in this case was not arbitrary or capricious. Moats attempts to distinguish the hypothetical case discussed in Q & A 288 from his own case on the ground that he "was not injured by some third party having no connection to the mine whatsoever." [2] Appellee's Br. at 17. Q & A 288, however, does not specify the identity of any other driver involved in the hypothetical accident it discusses. More important, even if Q & A 288 may be factually distinguished on the ground

2. Moats attempts to distinguish Q & A 130 on a

similar basis. *See* Appellee's Br. at 21.

Moats cites, the question before us is not whether we would find such a distinction appropriate if we were interpreting Q & A 288 *de novo*. Rather, the question before us is whether the Trustees acted arbitrarily and capriciously in failing to draw this distinction. In our view, they did not.

C. The district court held that the Trustees' decision in this case was arbitrary and capricious in part because the court saw "a significant connection" between Moats's accident and his employment. But neither the Plan itself nor the policy interpretation guidelines provide that a miner is entitled to a disability pension if injured in an accident having a "significant connection" with the miner's employment. Instead, as noted, the Plan states that the accident must be a "mine accident," and the guidelines state that the accident must occur "in the course of employment" (Q & As 130, 252). Accordingly, even if there was a "significant connection" between Moats's accident and his employment, it would not follow that the Trustees' decision was arbitrary and capricious.

Moats suggests that the Trustees' decision was properly overturned because he has been awarded worker's compensation, but in our view these benefits are of little significance for present purposes. A settlor of an ERISA plan is not required to incorporate worker's compensation standards into the plan, and unless such standards are incorporated we see no reason why they should bind the plan's trustees or administrator. *See Kunstenaar v. Connecticut General Life Ins. Co.*, 902 F.2d 181 (2d Cir.1990); *Brown v. Retirement Comm. of Briggs & Stratton Retirement Plan*, 797 F.2d 521 (7th Cir.), *cert. denied*, 479 U.S. 1094, 107 S.Ct. 1311, 94 L.Ed.2d 165 (1987); *Glover v. South Central Bell Telephone Co.*, 644 F.2d 1155 (5th Cir. 1981); *McNamara v. Journal Co.*, 581 F.Supp. 927 (E.D.Wisc.1984); *Paterson v. Southwestern Bell Telephone Co.*, 411 F.Supp. 79 (E.D.Ok.1976). Similarly, we see little significance for present purposes in the testimony of a federal mine inspector that Moats's accident would have been considered a mine injury under federal mine safety guidelines. Those guidelines did not have to be and were not incorporated into the UMW Plan.[3]

Finally, we do not think that either the court decisions in the *Thomas* case or the Trustees' decision in Harless's case provides a basis for sustaining the district court's decision here. Turning first to Harless's case, we agree with the Trustees that Harless's accident may reasonably be distinguished from Moats's. Harless, as previously noted, had arrived at work, had changed into his work clothes in the bathhouse, and was headed for the lamphouse to pick up his lamp when he slipped on ice and sustained his injury. The internal memorandum on which the district court relied stated that Harless was injured in a "mine accident" because he was injured "after his arrival at work" and "while preparing for the start of his work day at the mine." The memorandum cited Q & A DB–6, which states that a hypothetical miner who was killed on his employer's property while cleaning his truck bed in preparation for his day's work as a truck driver was killed in a "mine accident." Thus, the Trustees' decision with respect to Harless's claim may be viewed as based on a principle that is totally inapplicable to Moats, i.e., that an accident is a mine accident if it occurs after an employee has arrived at work and is preparing for the start of his work.

Moats and the district court point to a portion of the Harless memorandum concluding that the memorandum's application of the term "mine accident" to Harless's case was "consistent with the decisions of courts in workmen's compensation cases," (App. at 318) in which employees have been awarded benefits for injuries sustained

---

3. Moats's reliance on his receipt of Social Security disability benefits is even farther afield. Eligibility for such benefits is not restricted to those injured in employment-related accidents. The UMW Plan provides that receipt of such benefits conclusively establishes total disability (*see* Art. II D; *Horn v. Mullins*, 650 F.2d 35, 37 (4th Cir.1981)), but the plan does not provide—and it would be nonsensical to provide—that the receipt of such benefits establishes that the recipient was injured in a "mine accident."

while going to and coming from work if their accidents occurred close to the job site, on company property, and within a reasonable time before or after the beginning or end of the work day. The district court thought that it was arbitrary and capricious for the Trustees not to apply this worker's compensation rule in Moats's case, but we disagree. The Harless memorandum simply said that the interpretation in that case was "consistent with" the rule in worker's compensation cases. This statement did not expressly adopt this rule, and we do not think it constituted a binding commitment by the Trustees to apply the worker's compensation rule in all future cases involving the interpretation of the term "mine accident."

Turning last to the *Thomas* case, we agree with the district court that it is factually similar to Moats's case, but it is not identical. Thomas was injured while walking to his car, not while driving away from work, and thus Q & As 130 and 288 do not directly address the facts of his case. In any event, the district court's decision in *Thomas* obviously does not bind us, and our judgment order affirmance, under our long-established practice, has no precedential significance. We could not affirm the district court's decision in this case simply on the strength of our judgment order in *Thomas*. Instead, we must make an independent decision whether the Trustees in this case acted arbitrarily and capriciously in denying Moats's claim, and for the reasons already explained, we hold that they did not.

We will therefore reverse the decision of the district court and remand for entry of summary judgment in favor of the Trustees.