186 F.3d 418 (3rd Cir. 1999)
 JANICE M. KEATING, Appellant,
v.
THE WHITMORE MANUFACTURING COMPANY; CAPITAL SOUTHWEST CORPORATION; RETIREMENT PLAN FOR EMPLOYEES OF CAPITAL SOUTHWEST CORPORATION AND ITS AFFILIATES; RETIREMENT COMMITTEE OF THE RETIREMENT PLAN FOR EMPLOYEES OF CAPITAL SOUTHWEST CORPORATION AND ITS AFFILIATES; WILLIAM R. THOMAS, CHAIRMAN OF THE RETIREMENT COMMITTEE OF THE RETIREMENT PLAN FOR EMPLOYEES OF CAPITAL SOUTHWEST CORPORATION AND ITS AFFILIATES
 No. 98-1511
 UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT
 Argued March 25, 1999
Decided August 2, 1999
 
 Appeal from the United States District Court for the Eastern District of Pennsylvania (D.C. Civil Action No. 97-cv-04463) District Judge: Honorable Franklin S. VanAntwerpen Michael P. McIntyre, Esquire (Argued), 455 Linden Street, Allentown, PA 18102, Attorney for Appellant
 Beverly B. Godbey, Esquire (Argued), Gardere & Wynne, L.L.P., 3000 Thanksgiving Tower, 1601 Elm Street, Dallas, Texas 75201
 Jay E. Mintzer, Esquire, Jonathan M. Field, Esquire, Edelstein, Mintzer & Sarowitz, 22nd Floor, 1528 Walnut Street, Philadelphia, PA 19102, Attorneys for Appellees
 Before: GREENBERG, ROTH and ROSENN, Circuit Judge
 OPINION OF THE COURT
 ROTH, Circuit Judge:
 
 
 1
 Following her husband's death, Janice Keating brought suit against his employer to recover benefits from his retirement plan. The District Court granted summary judgment in favor of the employer because her husband had been terminated from his job prior to his death. We conclude that the pension plan administrators reasonably determined that the husband was not in "service" to the company at the time of his death. We will, therefore, affirm the judgment of the District Court.
 
 I. FACTS
 
 2
 On February 10, 1996, Whitmore Manufacturing Company[1] terminated one of its employees, Chris Keating, and eliminated his position. In its termination letter, Whitmore agreed to continue to pay Keating's salary and commissions through March 15, 1996. The letter stated that this compensation was not given in exchange for the additional performance of duties by Keating. Rather, it was promised because the termination had become effective immediately without notice and because in exchange for it Keating was expected to reaffirm his agreement not to go to work for a competitor.[2]
 
 
 3
 On March 7, 1996, Chris Keating died. As his widow, Janice Keating claimed death and retirement benefits from Whitmore's retirement plan. Because she did not agree with the initial calculation of benefits due her under the Plan, she appealed to the Plan's Retirement Committee, which was responsible for interpreting and making decisions regarding the Plan.
 
 
 4
 The Committee met to consider the facts surrounding Chris Keating's termination. The issue it had to determine was whether Janice Keating was entitled to benefits under S 2.4(A) of the Plan or under S 2.4(B). Section 2.4(A) covers death after termination of service, App. at 71, while S 2.4(B) covers death while in service. Id. at 76. The benefits allowed under S 2.4(B) are much greater.[3] The Committee determined that Keating was terminated prior to his death, which caused Janice Keating to receive the lesser benefits of S 2.4(A). In coming to this conclusion, the Committee defined "service" to mean the "active" performance of duties.[4] The Committee determined that Keating was not in service at the time of his death because the termination letter he had received on February 10 indicated that his position was terminated and his service concluded on that date.
 
 
 5
 Janice Keating appealed to the Committee for a reconsideration of its decision. The Committee met again and reached the same conclusion. Janice Keating's second appeal for reconsideration was denied.
 
 
 6
 Janice Keating then filed suit to recover the benefits. After discovery, the parties made cross-motions for summary judgment. The District Court reviewed the Committee's decision for abuse of discretion. It found that the Committee reasonably used the common meaning of "service" in the absence of a definition of that term in the Plan. The court therefore denied Keating's motion and granted judgment in favor of Whitmore. Keating appealed.
 
 
 7
 The District Court had jurisdiction over this action pursuant to 28 U.S.C. S 1331 and 29 U.S.C.S 1132(e)(1). We have jurisdiction pursuant to 28 U.S.C. S 1291.
 
 II. DISCUSSION
 
 8
 Our review of this appeal from a cross-summary judgment ruling is plenary. See DeWitt v. Penn-Del Directory Corp., 106 F.3d 514, 520 (3d Cir. 1997). Summary judgment is appropriate where "there is no genuine issue as to any material fact and [ ] the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); see Witkowski v. Welch, 173 F.3d 192 (3d Cir. 1999).
 
 
 9
 Our standard of review is abuse of discretion because the Plan gives broad discretion to the Committee to determine eligibility benefits.[5] Therefore, we must affirm unless we find the Committee's decision to be arbitrary or capricious. See Firestone Tire & Rubber Co. v. Bruch, 109 S.Ct. 948, 956-57 (1989); DeWitt, 106 F.3d at 520. We examine whether the District Court should have overturned the Committee's decision as "without reason, unsupported by the evidence or erroneous as a matter of law." Mitchell v. Eastman Kodak Co., 113 F.3d 433, 439 (3d Cir. 1997), quoting Abnathya v. Hoffmann-LaRoche, Inc., 2 F.3d 40, 45 (3d Cir. 1993).
 
 
 10
 Because we find after a review of the record that the Committee's decision was not arbitrary or capricious, we will affirm. First, the Committee reasonably considered the relevant information before making its decision. The Committee reviewed the Plan, the February 10 termination letter, and correspondence between Whitmore and Janice Keating's counsel. At its meeting, the Committee also questioned two Whitmore officials with whom Fithian had consulted before terminating Keating. Moreover, the Committee solicited an opinion from the Plan's counsel and later noted that its decision was consistent with the lawyer's advice. Finally, when Janice Keating appealed, the Committee reexamined the case, again determining that Janice Keating was eligible for S 2.4(A) benefits. See Abnathya, 2 F.3d at 47.
 
 
 11
 Nevertheless, Janice Keating argues that the Committee acted arbitrarily and capriciously by "ignoring" an "Employee Separation Form," completed by her husband's supervisor, Rex Fithian. See App. at 88. This form was not, however, before the Committee. See Mitchell, 113 F.3d at 440 (holding that the relevant record on appeal is the evidence before the reviewing body). Moreover, Janice Keating has made no showing that the Committee acted in bad faith by not considering the form. Although the Committee did not review the actual form, it interviewed the Whitmore officials who were involved with the decision to terminate Chris Keating. Indeed, even if the Committee had reviewed the form, it would have found that much of the information in it is contained in Fithian's termination letter. The form indicates that Chris Keating was terminated on February 10 and his last day of work was February 9. Final pay is characterized as "Wages in Lieu of Notice." Janice Keating points, however, to a portion of the form marked "Reason for Separation." The form indicates that Chris Keating was laid off because his position was discontinued. Janice Keating argues that because Fithian checked off the box for "laid off," rather than the one for "discharged," Chris Keating was not terminated. However, she made no such argument to the Committee, and "layoff " is not defined in the Plan. In fact, in a letter to the Committee, her counsel referred to Chris Keating's cessation in employment as a "termination." App. at 110. Finally, as discussed above, Fithian wrote on the form that February 10 was the "termination date." For these reasons, the Committee's failure to review the form does not render its decision unreasonable.
 
 
 12
 In addition to reviewing relevant evidence, the Committee also acted reasonably in choosing to give "service" its common lay meaning in the absence of a clear definition in the Plan. One member of the Committee, Tim Smith, explained,
 
 
 13
 I guess the distinction I would make when someone is in service and out of service is their point of termination. And an employee generally is in service of a company up to the point at which they have been terminated for whatever reason, after which they are no longer in service to the company.
 
 
 14
 Id. at 174.
 
 
 15
 Indeed, the term "service" as it relates to the work place is commonly understood to mean "useful labor that does not produce a tangible commodity." See Webster's Third New International Dictionary 2075 (1971). The February 10 termination letter indicated that Chris Keating's position was "eliminated" as of that day and that he was to return all company assets. Because Keating's position was eliminated, he could not have provided "useful labor" and thus could not have been in "service" at the time of his death.
 
 
 16
 Janice Keating contends that it was unreasonable for the Committee to have resorted to using the common meaning of "service" because the provisions in the Plan sufficiently explain the term. She opines that a person can be in service with the company as long as he is being paid, even when not performing duties.[6] Her references to the Plan, however, do not reveal a plain-language definition of "service." They merely highlight ambiguities, which the Committee has the power to resolve in its own discretion. Because the Committee's decision does not controvert the plain language and purpose of the Plan, see DeWitt, 106 F.3d at 520, we will not substitute our own judgment for the Committee's. See Mitchell, 113 F.3d at 439 (quoting Abnathya, 2 F.3d at 45).
 
 III. CONCLUSION
 
 17
 For the foregoing reasons, we will affirm the judgment of the District Court.
 
 
 
 NOTES:
 
 
 [1]
 Additional entities are named as appellees, including Whitmore's retirement plan and the plan administrators.
 
 
 [2]
 The letter, written by Keating's supervisor, Rex Fithian, states in pertinent part:
 Effective today, your position with The Whitmore Manufacturing Company is eliminated. In lieu of notice, you will be paid salary and commission through March 15, 1995 [sic]. . . . This additional continuation is being made to you in exchange for your reaffirmation that you will abide by the terms and conditions of your employment agreement dated August 18, 1989. The attached list of Company assets are in your possession and will be returned to the Company within the next few days. A final accounting will be faxed to you in the next two business days.
 App. at 87 (emphasis added). The reference to the August 18, 1989, employment agreement relates specifically to the agreement's non- compete clause.
 
 
 [3]
 Mrs. Keating would have received $106,644.96 under S 2.4(B). She was entitled to $13,240.07 under S2.4(A).
 
 
 [4]
 The term "service" is not specifically defined in the Plan.
 
 
 [5]
 According to S 7.4 of the Plan, the Committee is empowered to "make such rules and regulations and to take such action as may be necessary to carry out the provisions of the Plan and . . . subject to the provisions of the Plan, decide any questions arising [there from], which . . . shall be conclusive and binding on all parties." App. at 81. Section 7.5 grants the Committee "the full power and authority to construe and interpret any and all provisions of the Plan, to reconcile any inconsistencies and resolve any ambiguities in the terms of the Plan." Id. Under S 7.6(A), the Committee has the duty to "determine all facts" and "by application of the facts so determined and any other facts deemed material, determine the amount, if any, of benefit payable under the Plan." Id. at 82. Section 7.6 lists several detailed duties of the Committee and then states that the list is not exhaustive. Section 7.6 further provides that "the Committee shall, in addition, exercise such other powers and perform such other duties as it may deem necessary, desirable, advisable or proper for the supervision and administration of the Plan." Id. at 83.
 
 
 [6]
 She points to S 1.3 of the Plan, entitled "Leave of Absence and Termination of Service." App. at 68. Both "service" and "active service" are used in this section, which leads Mrs. Keating to believe that "service" means the state of being paid by an employer, something less than the actual performance of duties. Mrs. Keating also points to language in S 1.1(A)(13) which defines "employee" as "any person on the payroll of the Employer." Id. at 53. Additionally, language in S 1.1(A)(17) defines "hour of service" as an hour for which an employee is paid, including "nonworking time." Id. at 56.
 Mrs. Keating refers to language in S 1.3 which indicates that "service" that is "interrupted" is considered terminated upon "retirement, quit, discharge, resignation or death." Mrs. Keating argues thus that her husband's service could not have been terminated upon his "layoff " and therefore must have been terminated upon his death. However, the issue of "layoff " was not before the Committee and is therefore not properly before us. See Mitchell, 113 F.3d at 440.