Duane A. JOHNSON, Appellant,

v.

UMWA HEALTH AND RETIREMENT FUNDS.

No. 04–2267.

United States Court of Appeals, Third Circuit.

Submitted Under Third Circuit LAR 34.1(a) Jan. 14, 2005.

Decided Feb. 8, 2005.

---

Lawrence R. Chaban, Pittsburgh, PA, for Appellant.

Glenda S. Finch, Christopher F. Clarke, Washington, DC, for Appellee.

Before ROTH and CHERTOFF, Circuit Judges, and IRENAS,* Senior District Judge.

## OPINION

CHERTOFF, Circuit Judge.

Appellant, Duane A. Johnson ("Johnson"), instituted this civil action under the Employment Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1132. Johnson sought review of the decision of Appellee, the Trustees of the United Mine Workers of America ("Trustees"), denying him disability pension benefits under the United Mine Workers of America 1973 Pension Plan and Trust (the "UMWA Plan"). The District Court granted summary judgment in favor of the Trustees. We will affirm.

## I.

Because we write only for the parties who are familiar with the facts of this case, our summary of the facts will be brief. Johnson was employed in the coal mining industry from October 1978 to June 1992. During that time, Johnson worked exclusively for BethEnergy Mines, Inc. ("BethEnergy"), at various jobs. On June 19, 1992, Johnson strained his lower back at work while lifting a sump pump to clean around it. At that time, Johnson stopped working for BethEnergy and was unilaterally placed on Pennsylvania workers' compensation benefits by BethEnergy effective June 22, 1992, for a strained lower back.

In December 1993, BethEnergy attempted to end its liability to Johnson for workers' compensation benefits by filing a termination petition under the Pennsylvania Workers' Compensation Act. Extensive litigation ensued. On July 16, 1996, Judge John F. Kenny of the Bureau of Workers' Compensation, found that Johnson's mining injury had not ended and that Johnson remained disabled from the injury. In making this determination, Judge Kenny found that the opinions of Dr. Lee, who had treated Johnson since October 1992, were more credible than those of Dr. Lieber and Dr. Stevens, that contradicted the opinion of Dr. Lee. Judge Kenny held that Johnson was entitled to compensation "indefinitely" for his total disability benefits, but did not determine that the disability was permanent.

On March 17, 1995, while the workers' compensation litigation was still pending, Johnson sought Social Security disability benefits. Johnson alleged disability from lumbo-sacral sprain syndrome with severe back dysfunction caused by his June 1992

---

* Honorable Joseph E. Irenas, Senior United States District Judge for the District of New Jersey, sitting by designation.

mining accident. Johnson was initially denied Social Security Disability Insurance ("SSDI") on May 17, 1995, based on the finding that Johnson had a degenerative disc disease and diabetes. The Social Security Administration ("SSA") affirmed the denial on June 14, 1995. On September 17, 1996, Administrative Law Judge ("ALJ") Newton Greenberg determined that, while Johnson's degenerative disc disease and diabetes alone did not meet the requirements for disability, when combined with Johnson's vocational limitations the physical impairments were sufficient to find Johnson disabled. The SSA granted Johnson SSDI benefits effective June 19, 1992, with a primary diagnosis of degenerative disc disease and a secondary diagnosis of diabetes.

On November 7, 1996, Johnson applied for a disability pension under the provisions of the UMWA Plan, claiming that the mining injury he suffered in June 1992 continued to disable him from performing work in the coal industry.

The UMWA Plan is an irrevocable trust established pursuant to the collectively-bargained National Bituminous Coal Wage Agreement of 1974 between the United Mine Workers of America and the Bituminous Coal Operators' Association in accordance with Section 302(c) of the Labor–Management Relations Act of 1947, 29 U.S.C. § 186(c). Article II.C. of the Plan provides that:

A participant who (a) has at least 10 years of signatory service prior to retirement, and (b) becomes totally disabled as a result of a mine accident ... shall, upon retirement (hereinafter "Disability Retirement"), be eligible for a pension while so disabled. A Participant shall be considered to be totally disabled only if by reason of such accident such Participant is subsequently determined to be eligible for Social Security Disability Insurance Benefits under Title II of the Social Security Act or its successor.

To qualify for disability benefits under the UMWA Plan, an applicant must therefore establish that: (1) he suffered a mine accident that occurred while working in a classified job for a signatory employee; (2) he became totally disabled as evidenced by an SSDI award; and (3) the mine accident must be the cause of the disability.

Johnson's application was denied on December 5, 1997, based on the finding that his disabling conditions were not attributable to a mining accident as required by the UMWA Plan. Johnson appealed and submitted the testimony of Dr. Lee from his workers' compensation case. The Trustees affirmed the denial of Johnson's pension on appeal, based on the fact that they were unable to establish the existence of a causal link between the June 1992 mining accident and Johnson's SSDI benefits. In making this determination, the Trustees found that although the medical evidence substantiated Johnson's claim that he sustained a lumbosacral strain due to a mining accident in June 1992, Johnson received Social Security benefits for a severe degenerative disc disease and diabetes, conditions which were wholly unrelated to the mining accident.

The Trustees' denial of Johnson's disability pension led to the filing of this civil action in District Court. Following the filing of the Complaint, a Case Management Conference was held by Judge Robert J. Cindrich on August 17, 1999. At the Conference, Johnson requested limited discovery regarding the procedures followed by the Trustees in making their determination. Specifically, Johnson sought the

addition of interpretive Q & A DP–1[1] to the record to which the Trustees consented. Johnson also sought the discovery of more interpretive Q & As which, he argued, could have bearing on the case, as well as the depositions of various Disability Pension Analysts, the Senior Manager of Eligibility Services and the Program Specialist of the UMWA Plan.

The conference resulted in an order of August 20, 1999, where the parties were to confer regarding discovery. If no agreement could be reached, the parties were to provide argument regarding their respective positions for a determination by Judge Cindrich. The parties could not reach agreement on the issue. Each filed a brief in support of their position regarding discovery.

The case was subsequently reassigned to Judge Arthur Schwab. Judge Schwab entered an order on February 17, 2004, to show cause why the Complaint should not be dismissed for failure to prosecute on the part of Johnson. Both parties responded that they were awaiting an order of the court on the request for discovery made by Johnson. On February 27, 2004, Judge Schwab held a teleconference with counsel regarding the show cause order. At that time, Judge Schwab denied the request for discovery and set deadlines for cross-motions for summary judgment. The parties then filed the cross-motions within the time allowed by the District Court.

On April 14, 2004, Judge Schwab filed a memorandum opinion and order granting summary judgment to the Trustees. The District Court found that, in accordance with the arbitrary and capricious standard of review, there was substantial evidence in the record to support the Trustee's decision. We have jurisdiction pursuant to 28 U.S.C. § 1291.

## II.

This Court must exercise plenary review over the District Court's affirmance of the Trustees' denial of Johnson's disability pension and apply the same standard of review the District Court applied in evaluating the Trustees' decision. *DeWitt v. Penn–Del Directory Corp.*, 106 F.3d 514, 520 (3d Cir.1997). Summary judgment is proper if there is no genuine issue of material fact and if, viewing the facts in the light most favorable to the non-moving party, the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Like the District Court, this Court must review the Trustees' decision under the arbitrary and capricious standard and should affirm their determination as long as it is supported by substantial evidence in the record, even if the record also contains substantial evidence that would support a different result. *Moats v. United Mine Workers of America Health and Retirement Funds*, 981 F.2d 685, 689 (3d Cir.1992); *Orvosh v. Program of Group Ins. for Salaried Employees of Volkswagen of Am., Inc.*, 222 F.3d 123, 129 (3d Cir.2000) ("a plan administrator's decision will be overturned only if it is clearly not supported by the evidence on the record or the administrator has failed to comply with the procedures

---

**1.** Article VII.B.(1) of the UMWA Plan grants the Trustees authority to develop a series of interpretive guidelines to help them interpret the plan's provisions. These guidelines are called "Questions and Answers" ("Q & As"). Interpretive Q & A DP–1 was referenced in Q & A 252, which had already been placed in the record by the Trustees. Q & A 252 provided guidelines for when a claimant is considered totally disabled as a result of a mining accident.

required by the plan.") (internal citation omitted).

This Court must review the District Court's denial of Johnson's request for discovery under an abuse of discretion standard of review. *Brumfield v. Sanders*, 232 F.3d 376, 380 (3d Cir.2000).

On appeal, Johnson raises two arguments. First, Johnson argues that the Trustees' decision to deny him disability pension was arbitrary and capricious because they relied solely on the medical diagnosis of the ALJ who was not qualified to make a diagnosis of medical conditions and who based his decision on medical evidence that did not support the finding that Johnson was disabled because of a degenerative disc disease and diabetes. Second, Johnson argues that the District Court erred when it denied him the opportunity to conduct limited discovery on the procedures the Trustees used for making their decision. We will examine each of these arguments, in turn.

## A.

Johnson first argues that the Trustees' decision to deny him disability pension was arbitrary and capricious because the Trustees "latched on" to the diagnosis of the ALJ rather than performing their own independent determination of Johnson's medical condition. Johnson argues that the Trustees' adoption of the ALJ decision was also clearly erroneous because the SSA records were devoid of any medical evidence indicating that Johnson had been diagnosed with degenerative disc disease. Johnson further contends that the District Court erred by providing additional analysis not found in the Trustee's decision to support the pension denial, since the Trustees' decision would not have withstood scrutiny without the help of the District Court. We disagree with Johnson's assessment of the Trustees' decision.

The Trustees' decision does not indicate that they relied solely on the ALJ's opinion in deciding to deny Johnson disability pension. As Johnson himself notes, under the heading of "Causal Link," the Trustees independently reviewed all the medical evidence they had both from the treating physicians and physicians who examined Johnson or reviewed his medical records for litigation, which went beyond the SSA record.[2] This medical evidence did not invariably suggest that Johnson's disability was the result of the 1992 mining accident. On the contrary, there was ample medical evidence in the record indicating that Johnson's disability was not the result of the 1992 mining accident.[3] In support of

---

2. Johnson's assumption that the ALJ opinion was exclusively based on the SSA record which was devoid of any reference to a degenerative disc disease is also incorrect. The ALJ noted that his decision was based on the "entire record...." (JA 203.) This record included medical reports from Doctors Lemburg, Lieber, Stevens, Adelsheimer and others, Johnson's MRI results, and physical therapy notes from June 1992 indicating Johnson's history of arthritis.

3. On September 23, 1992, Dr. Lemburg stated that Johnson was not totally disabled, merely "partially disabled on a temporary basis" and advised him to "lose weight" (JA 280.); On March 24, 1993, Dr. Lieber opined that John-

son had made a full and complete recovery from the work related injury of June 19, 1992 (JA 374.); On August 30, 1996, Dr. Aldesheimer found that Johnson had fully recovered, but "would have severe difficulty returning to his previous employment secondary to non-work-related degenerative disc disease and a nonwork-related medial meniscul tear." (JA 448.) In addition, Dr. Stevens, who reviewed Johnson's records and spoke to attending physician Dr. Lee for the purpose of a utilization review, acknowledged that Johnson should have already recovered from the accident-induced lumbar strain in June 1994. (JA 386.) He wrote that "there is no indication from the information provided, that this patient needs any further medical care for the

their denial, the Trustees described in detail the medical evidence on which they relied on to make their decision. There is no indication in either of their decisions that the Trustees' misused the ALJ decision to deny Johnson the pension application. Accordingly, Johnson's argument that the Trustees' decision was arbitrary and capricious because it relied exclusively on the decision of the ALJ is rejected.[4]

■ Likewise, Johnson's argument that the District Court impermissibly substituted its own analysis for that of the Trustees is also rejected. Under the arbitrary and capricious standard, a court's judicial review must be "searching and careful" but a court "may not substitute its judgment for that of the [decisionmaker]." *Moats*, 981 F.2d at 687 (citing *FCC v. National Citizens Comm. for Broadcasting*, 436 U.S. 775, 803, 98 S.Ct. 2096, 56 L.Ed.2d 697 (1978)). The District Court concluded that, based on the medical evidence, it was not unreasonable for the Trustees to reject Dr. Lee's opinion because it was not premised on all of Johnson's relevant medical history and because it was contradicted by at least three other medical opinions. The District Court's decision was grounded in the medical evidence that the Trustees explicitly stated they relied on in making their decision. In determining that there was substantial evidence in the record for the Trustees to find that Johnson's back condition was not proximately caused by the 1992 mining accident, the District Court did not substitute its judgment for

that of the Trustees. As a result, this Court will affirm the District Court's determination that the Trustees' decision was not arbitrary and capricious.

### B.

■ Johnson also argues that the District Court erred when it denied his request for limited discovery because the arbitrary and capricious standard of review does not limit the District Court to the evidentiary record developed through the application and decision process. Johnson further contends that if the District Court were not permitted to supplement the record with discovery, the Trustees could stand by their record and claim they acted reasonably when in reality their procedures were arbitrary and capricious. We disagree.

This Court has made clear that the record for arbitrary and capricious review of ERISA benefits denial is the record made before the plan administrator which cannot be supplemented during litigation. *See Mitchell v. Eastman Kodak Co.*, 113 F.3d 433, 440 (3d Cir.1997) (when reviewing an ERISA plan administrator's decision to deny benefits, the reviewing court must look to the evidence that was before the administrator when he or she made the decision being reviewed); *Kosiba v. Merck & Co.*, 384 F.3d 58, 67 n. 5 (3d Cir.2004). This Court has found however, that when a reviewing court is deciding whether to employ the arbitrary and capricious standard

---

lumbar/sacral myoligamentogenic stress injury syndrome." (JA 387.) The record also reveals an x-ray of Johnson's spine taken three days after the accident which showed no evidence of fracture or dislocation (JA 231, 295) and an MRI scan taken a month after the accident which showed preexisting degenerative changes, but no stenosis or herniation caused from a back sprain. (JA 247, 254.)

4. Although Johnson does not raise this argument on appeal, it is also worth noting that the reasonableness of the Trustees' decision is not affected by his prior award of workers' compensation. This Court has found that workers' compensation benefits to an injured mine worker does not bind the Trustees and therefore is of little significance in a subsequent action for disability pension. *Moats*, 981 F.2d at 689.

or a more heightened standard of review, it may consider evidence of potential biases and conflicts of interest that are not found in the administrator's record. *Id.*

Here, there is no dispute that the arbitrary and capricious standard of review applied and that there was no potential conflict of interest that might warrant additional discovery. Moreover, the record submitted to the District Court was complete in that it included all the medical evidence, the relevant provision of the UMWA Plan, and the interpretive Q & A guidelines relied on by the Trustees in making their decision. As a result, the District Court did not abuse its discretion when it denied Johnson's discovery request.[5]

### III.

For the foregoing reasons, we will affirm the judgment of the District Court.

---

**5.** Johnson attempts to rely on *Moats v. United Mine Workers of America Health and Retirement Funds*, 981 F.2d 685, 689 (3d Cir.1992) and *Keating v. Whitmore Manufacturing Co.*, 186 F.3d 418 (3d Cir.1999) in support of his contention that the arbitrary and capricious standard of review does not limit the District Court to the evidentiary record before the Trustees. Johnson's reliance on these two cases, however, is misplaced. While this Court in *Moats* examined several interpretive Q & As in order to discern the definition of the term "mine accident" in the UMWA Plan, there is no indication that the Q & As or prior Trustee decisions were not already part of the record. Likewise in *Keating*, Johnson relies solely on this Court's reference to "discovery" which occurred prior to the cross motions for summary judgment. 186 F.3d at 420. There is no indication in *Keating*, however, what the context of this "discovery" actually was. Without more, Johnson cannot rely on this case to support a proposition that contradicts established case law in this Circuit.