**Judy L. BURK, Appellant**

v.

**BROADSPIRE SERVICES, INC.; Highmark Life Insurance Company; Utz Quality Foods, Inc.**

No. 07–3729.

United States Court of Appeals, Third Circuit.

Submitted Under Third Circuit LAR 34.1(a) Nov. 19, 2008.

Filed: Aug. 18, 2009.

Thomas J. Hagner, Esq., Hagner & Zohlman, Cherry Hill, NJ, for Appellant.

Adam K. Derman, Esq., Wolff & Samson, West Orange, NJ, for Broadspire Services, Inc.; Highmark Life Insurance Company; Utz Quality Foods, Inc.

Before: BARRY and CHAGARES, Circuit Judges, and COHILL, District Judge.[*]

## OPINION OF THE COURT

CHAGARES, Circuit Judge.

Plaintiff Judy L. Burk filed this lawsuit under the Employee Retirement Income Security Act, 29 U.S.C. §§ 1001–1461 ("ERISA") against defendants Highmark Life Insurance Company, insurance provider to Burk's employer, Utz Quality Foods, Inc. ("Utz"), and Broadspire Services, Inc. ("Broadspire"), the claims administrator, seeking reinstatement of Long Term Disability ("LTD") retroactive and ongoing benefits, and for a determination of her right to future benefits. Defendants filed a motion for summary judgment, contending that Burk was capable of performing several occupations in her geographic area, consistent with her skills and physical abilities, and that her disability benefits were rightly terminated. The District Court granted summary judgment in favor of defendants. Burk appeals, and

this Court will affirm the District Court's judgment.

## I.

Burk began her employment with Utz as a Route Salesperson on May 22, 2000, at a salary of $26,202 per year. Her duties included loading and unloading trucks and delivering products. Previously, in 1995, Burk suffered three herniated disks and two bulging disks, leading to severe groin and lumbar spine pain. Burk attended rehabilitation, and subsequently returned to work as a delivery woman for five years. Burk claimed that in her first year of employment with Utz, she began experiencing lower back pain and numbness. In May 2001, Burk applied for short term disability with Utz, which was granted.

Burk was insured for LTD benefits through her employer, Utz, under a group policy issued by Highmark and administered by Broadspire. To receive LTD benefits under the policy, a claimant (a) is "required to be Totally Disabled from [her] own occupation during the first 39 months of one continuous period of Disability," meaning that the claimant must be "unable … to perform the substantial and material duties of [her] own occupation, with or without reasonable accommodation by an employer" and is "not working at all"; and (b) "must be Totally Disabled from all occupations after the first 39 months of one continuous period of disability," meaning that, after the first 39 months, the claimant must be unable "to perform the substantial and material duties of any occupation for which [she is] reasonably fitted by education, training, and experience, with or without reasonable accommodation by an employer" and is "not working at all." Therefore, under the policy, after the first 39 months, the

---

[*] The Honorable Maurice Cohill, Jr., Senior District Judge for the United States District Court for the Western District of Pennsylvania, sitting by designation.

734

claimant must be "Totally Disabled" from "any occupation" for which she is "reasonably fitted by education, training and experience."

In September 2001, Burk submitted a claim for LTD benefits, and completed a claimant questionnaire in support thereof. She reported being unable to operate a clutch, lift any weight, or sit or stand for more than 10–20 minutes. In addition, Burk's treating physician, Walter Crane, D.O., referred her for an MRI in June 2001. The MRI revealed early focal left lateral disc protrusions at L4–5 and L5–S1. In April 2002, Highmark determined that Burk was Totally Disabled from performing the duties of her occupation for the first 39 months following her disability. During this period, in May 2003, Dr. Crane submitted an Attending Physician Statement indicating that Burk's status had not changed, that her return to work was "undetermined," and ranked her physical impairment at "Class 5—Severe limitation of functional capacity; incapable of minimal (sedentary) activity." Appendix (App.) 67. Dr. Crane did not recommend Burk for vocational retraining.

In January 2004, Dr. Crane completed another Attending Physician Statement, in which he indicated that Burk might be a suitable candidate for vocational rehabilitation. At the same time, Dr. Crane noted that Burk had been referred to physical rehabilitation "without effect" in 2001, and that the prognosis was "guarded." App. 212, 213. Dr. Crane found Burk's limitations to include, in part, "pain with any significant physical activity," "unable to stand or walk > 10–15 m[inutes]," "unable to sit > 10–15 m[inutes]," and "unable to bend frequently or lift > 10 lbs." App. 213. Also in January 2004, Broadspire conducted a Field Care Management ("FCM") Assessment of Burk, in which William Cromwell, R.N. observed and interviewed Burk but did not conduct a medical examination. Cromwell noted that Burk "reposition[ed] herself often" due to pain, but that he was "[u]nable to determine the patient's level of pain." App. 220, 222. In response to a question regarding the strengths and skills that would assist Burk in obtaining employment, Cromwell responded that Burk was friendly and verbal and "[w]ith training, the client might be able to do phone work such as customer service or sales." App. 222.

Burk's LTD benefits based upon her inability to perform the duties of her own occupation expired on August 19, 2004. In February 2004, Broadspire advised Burk that for benefits to continue beyond that date, Burk must be Totally Disabled from any occupation. Broadspire further advised Burk that during the transition review process, Broadspire would conduct further inquiries, including a review with a vocational consultant.

In July 2004, during the "transition period," Broadspire contracted with an occupational therapist, Debbie Kauterman, to complete a Functional Capacity Evaluation ("FCE") of Burk, the purpose of which was to determine Burk's "functional abilities to perform the duties of any occupation." App. 227. Kauterman found that, while Burk could sit for 30 minutes, she "had significant difficulties with sitting, carrying, lifting, stooping, balancing and kneeling.... She needed assistance with an external object when standing from a kneeling or stooped position." *Id.* Kauterman concluded that Burk "demonstrated difficulty with most tasks during the evaluation due to complaints of back pain. Her performance was self limited due to reported pain." App. 228. Finally, Kauterman concluded that Burk "did not demonstrate the ability to work at a Sedentary work level." *Id.* On August 6, 2004, based on the July 2004 FCE, Broadspire deter-

mined that Burk met the definition of "Totally Disabled" from "any occupation," and that her benefits would continue beyond the initial 39–month period. App. 69. Broadspire informed Burk that it would "continue to monitor your disability status" and that she would continue to receive LTD benefits "as long as you continue to meet the Policy's definition of disabled." *Id.*

In October 2004, Broadspire engaged an agency to perform video surveillance on Burk. Although Broadspire denies relying on the surveillance itself in making its claims determinations, Broadspire admitted that "the content of the video . . . led to continued monitoring and a subsequent FCE."[1] In the interim, Dr. Crane submitted an updated Attending Physician Statement, in which he found her objective and subjective symptoms consistent with previous examinations, including a herniated disc of the lumbar spine, radiculopathy and lower back pain. App. 253. Dr. Crane concluded that Burk's prognosis was "guarded," that she had increased pain and spasms with "significant physical activity," and that she remained "unable to walk/stand or sit in any one position for greater than 10–15 min." App. 254. He again ranked Burk's physical impairment as "Class 5—Severe limitation of functional capacity/incapable of sedentary work." *Id.*

In February 2005, following Dr. Crane's submission and the surveillance report, Broadspire notified Burk that it was scheduling a second FCE for March 2005. The evaluator concluded that "Ms. Burk demonstrated limitations with loading of the lumbar spine and left lower extremity as well as lumbar flexion. She was able to perform the testing; however, she was limited by reports of pain in her lumbar spine region, her left groin area and her left lower extremity. Objective signs of pain were consistent with her subjective reports." App. 257. Taking these limitations into consideration, as noted in the Functional Abilities Summary chart, the examiner found that Burk demonstrated the ability to perform activities within the Sedentary Physical Demand Classification, though noting that even with accommodation, "it is probable that she would remain symptomatic." *Id.*

Following the March 2005 FCE, Broadspire conducted an Employability Assessment to evaluate whether Burk was employable. A Vocational Field Care Manager, Carole Fisher, reviewed the March 2005 FCE, Dr. Crane's statements, and Burk's resource questionnaire. Fisher also reviewed Burk's medical history, work history, and education. Fisher found that Burk was employable for several occupations in her geographical area consistent with her pre-disability salary. Based upon the foregoing, on April 27, 2005, Broadspire notified Burk that LTD benefits would be terminated as of May 1, 2005. Burk appealed this decision to Broadspire in May 2005.

In support of her appeal, Burk submitted a letter by Gerald Dworkin, D.O., a physician from whom she received treatment beginning in May 2005. In his examination, Dr. Dworkin found "significant pain on lumbar extension and much difficulty with mobility," and agreed that her MRI showed disc herniations. App. 73. Although he noted Burk found "somewhat

---

1. The District Court reviewed the surveillance video and noted that it "shows Plaintiff walking briskly in and out of several stores and through the parking lots of several shopping centers, while many times carrying large white plastic shopping bags in one hand that are filled with unknown articles, without any apparent trouble. The surveillance video also shows Plaintiff climbing into a large Chevrolet sport utility vehicle, with no apparent difficulties." App. 16.

less discomfort" after epidural injections, she had "continued limitations in terms of her functional capacity." App. 73, 74. Dr. Dworkin noted that Burk's latest recurrence "caused significant disability" and that "since January of 2005, she has been unable to perform her normal customary work duties."[2]

Broadspire retained Lucy Cohen, M.D., to conduct a physician peer review on July 22, 2005. Dr. Cohen conducted a paper review of Burk's file, including the opinions of Dr. Crane and Dr. Dworkin. Following her review, Dr. Cohen concluded that Burk was able to perform a sedentary job, with certain accommodations. Broadspire then forwarded the file to Highmark for its review and final determination. Highmark had Burk's file further reviewed by Andrea M. Carabello, M.D., M.P.H., and others in its corporate medical team. Dr. Carabello also concluded that there was "no clinical information available from either Dr. Dworkin or Dr. Crane which provides objective evidence of the claimant's inability to function in some capacity" and that "there is no objective basis that would serve to preclude this individual's ability to at least function in a sedentary duty capacity." App. 82. Broadspire notified Burk through counsel in September 2005 that the original decision to terminate LTD benefits was upheld.

Burk filed this lawsuit in District Court. On cross-motions for summary judgment, the District Court determined that Broadspire's decision was subject to deferential arbitrary and capricious review because Highmark's LTD policy granted the fiduciary "full and exclusive authority to administer claims and to interpret the Group Policy," conveying discretionary authority to Broadspire. App. 12–13. The District Court granted summary judgment in favor of defendants, concluding that even under a heightened standard of review, Burk failed to "establish that Broadspire's decision to deny LTD benefits is 'without reason' or 'unsupported by substantial evidence.'" App. 16. Burk then appealed to this Court.

## II.

We exercise plenary review over a district court's summary judgment decisions, and we apply the same standard of review that the District Court should have applied. *See Elsmere Park Club, L.P. v. Town of Elsmere*, 542 F.3d 412, 416 (3d Cir.2008).[3] ERISA does not specify a standard of review for an action brought under § 1132(a)(1)(B), *Mitchell v. Eastman Kodak Co.*, 113 F.3d 433, 437 (3d Cir.1997), but the Supreme Court has determined that "a denial of benefits challenged under § 1132(a)(1)(B) is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989). We previously held that when the administra-

---

**2.** In a nearly identical draft of this letter, dated July 1, 2005, Dr. Dworkin added that Burk's limitations from her normal customary work duties "includ[e] any type of Secretarial duties." App. 294; *see also id.* at 295 ("She can not do any Secretarial duties, typing, etc."). The District Court was rightly concerned with this discrepancy; nevertheless, it is of no moment to our resolution of this appeal. As we discuss below, the physicians and vocational consultants that Broadspire

relied upon did not dispute the medical evaluations of Burk's treating physicians but concluded, given Burk's functional limitations, that she was capable of sedentary work.

**3.** The District Court had jurisdiction over this case pursuant to 29 U.S.C. § 1132(e) and 28 U.S.C. § 1331. We have jurisdiction over the appeal under 28 U.S.C. § 1291.

tor has discretionary authority to determine eligibility for benefits, as Broadspire did in this case, the decision must be reviewed under an arbitrary and capricious standard, see *Abnathya v. Hoffmann–La Roche, Inc.*, 2 F.3d 40, 45 (3d Cir.1993), and instructed district courts to apply "heightened standard of review" or "heightened scrutiny" when a plan administrator both evaluates claims for benefits and pays those claims, see *Pinto v. Reliance Standard Life Ins. Co.*, 214 F.3d 377, 387 (3d Cir.2000).

The Supreme Court recently clarified that, where the plan gives the administrator such discretionary authority, the appropriate standard of review is for abuse of discretion. *Metropolitan Life Ins. Co. v. Glenn*, — U.S. —, 128 S.Ct. 2343, 171 L.Ed.2d 299 (2008). The Court further held that there is a conflict of interest under Firestone when a plan administrator both evaluates claims for benefits and pays those claims, and that the district court should weigh the conflict of interest as one factor in determining whether there was an abuse of discretion. *Id.* at 2352–53.

■ The District Court in this case determined that even under a heightened arbitrary and capricious standard of review, there was "more than enough evidence in the record to justify Broadspire's denial of benefits." App. 15. The heightened arbitrary and capricious standard is more favorable to Burk than the standard set forth in Glenn, and as we recently concluded in another case, "we find no prejudice in our considering [the claimant's] appeal using the Glenn standard without remanding." *Doroshow v. Hart-*

*ford Life & Accident Ins. Co.*, 574 F.3d 230, 234 n. 1 (3d Cir.2009); *cf. Estate of Schwing v. Lilly Health Plan*, 562 F.3d 522, 526 n. 2 (3d Cir.2009) ("Our prior caselaw referenced an 'arbitrary and capricious' standard of review, while Glenn describes the standard as 'abuse of discretion.' We have recognized that, at least in the ERISA context, these standards of review are practically identical." (citation omitted)). Accordingly, we will apply the Supreme Court's decision in Glenn to this case.

### III.

Burk argues that Broadspire's review was tainted by numerous procedural irregularities by, among other things,[4] "ignor[ing] the findings of Burk's treating doctors," as well as ignoring the recommendations resulting from the January 2004 FCM Assessment[5] and July 2004 FCE "to approve benefits." Burk also argues that Broadspire failed to consider her award of Social Security Disability benefits, and failed to inform Broadspire's vocational consultant of the award.

■ Burk argues that Broadspire failed to consider the opinions of her treating physicians. "ERISA does not require that plan administrators give the opinions of treating physicians special weight," *Post v. Hartford Ins. Co.*, 501 F.3d 154, 166 (3d Cir.2007) (citing *Black and Decker Disability Plan v. Nord*, 538 U.S. 822, 833–34, 123 S.Ct. 1965, 155 L.Ed.2d 1034 (2003)). Moreover, Burk's assertion is unsupported by the record. Indeed, Broadspire's physicians and consultants agreed with Burk's

4. Burk refers to several of Broadspire's actions as procedural irregularities warranting heightened review under Pinto and constituting an abuse of discretion. We have considered all of the arguments raised by Burk, but discuss only the most salient in detail.

5. Burk refers to the January 2004 examination as an FCE. Burk Br. at 2. That examination was, as already noted, an FCM Assessment of Burk, in which Cromwell observed and interviewed Burk but did not conduct a medical examination.

treating physicians that Burk suffered several functional impairments,[6] but concluded that those impairments were not of the type that would prevent her from performing any occupation, which is required in order for LTD benefits to continue past the initial 39 month disability period.

Burk next argues that Broadspire ignored the January 2004 FCM Assessment and the July 2004 FCE in determining that Burk was capable of sedentary work and denying her benefits. First, the January 2004 FCM Assessment was used as part of Broadspire's review of whether Burk was disabled from her own occupation within the first 39 months of disability. Contrary to Burk's contention, that FCM Assessment did not conclude that Burk was "unable to perform sedentary work." *See* App. 222. Second, in August 2004, following the July 2004 FCE, Broadspire concluded that Burk was "Totally Disabled" and granted her benefits beyond the initial 39-month period. Burk's argument does not consider Broadspire's additional actions following the initial grant of LTD Benefits. Following an additional FCE, as well as a vocational analysis, and a Physician Peer Review, Broadspire concluded that Burk was not "Totally Disabled" and discontinued her LTD benefits. Broadspire retained discretion to perform additional FCEs and other examinations, and had informed Burk that it would "continue to monitor your disability status." App. 69. Broadspire's determination to deny Burk continuing benefits was a product of this ongoing review.

Finally, the Social Security Administration's determination of "disability" is not binding in the instant case, where the determination is governed by the plan terms rather than statute. *See Moats v. United Mine Workers of Am. Health & Retirement Funds,* 981 F.2d 685, 689 (3d Cir. 1992); *Kunstenaar v. Conn. Gen. Life Ins. Co.,* 902 F.2d 181, 184 (2d Cir.1990). While the award of Social Security Disability benefits may be a relevant factor in an administrator's decision, failure to consider this determination does not render the administrator's decision an abuse of discretion. *See Hobson v. Metro. Life Ins. Co.,* 574 F.3d 75, 91–92 (2d Cir.2009).

Having considered all the arguments raised by Burk, we are not persuaded that the District Court erred. We conclude that Broadspire's denial of benefits was not an abuse of discretion.

### IV.

For the foregoing reasons, we will affirm the judgment of the District Court.

---

**6.** Burk contends that Broadspire provided certain of its consultants, including the vocational consultant, with limited information from her file. Although the vocational consultant did not receive certain items in Burk's file, such as an earlier FCE and Dr. Crane's January 26, 2005 Attending Physician's Statement, the consultant relied on the latest FCE and Dr. Crane's January 2004 statement, which was consistent with the later statement.

*See* App. 253. In addition, Broadspire asserts that Dr. Cohen reviewed Burk's entire file. In any event, Broadspire considered the opinions of Burk's treating physicians before finally denying her appeals. Following Burk's appeal, Highmark's corporate medical team, including Dr. Carabello, reviewed Burk's file, including all reports of Dr. Dworkin and Dr. Crane. App. 8.